**STATE of Iowa, Appellee,**

v.

**Peter PREDKA, Appellant.**

No. 95–1045.

Supreme Court of Iowa.

July 24, 1996.

As Amended on Denial of Rehearing
Nov. 8, 1996.

Reconsideration of Order on Rehearing
Denied Nov. 20, 1996.

Dean Stowers of the Rosenberg Law Firm, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, John P. Sarcone, County Attorney, and Jamie Bowers, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and TERNUS, JJ.

LAVORATO, Justice.

Peter Predka appeals from judgments of conviction and sentence for possession of a controlled substance with intent to deliver and failure to possess a drug tax stamp. *See* Iowa Code §§ 124.401(1)(c)(5), 453B.3, 453B.7 (1995). He raises several constitutional issues, complains about the district court's refusal to submit a jury instruction he

proposed, and insists the court should have admitted evidence that it was impossible for him to comply with our drug tax stamp law.

Because we conclude none of Predka's arguments have merit, we affirm.

## I. Background Facts.

Predka is a Utah resident. On July 16, 1994, he was driving his 1988 Lincoln Town Car with out-of-state plates through Des Moines on Interstate 80. At the time, Craig Brooks, a deputy of the Polk County sheriff's office, stopped him for speeding and not wearing a seat belt. In searching the trunk of Predka's car, Brooks found and seized about 140 pounds of high-grade marijuana and $2147 in cash. The marijuana has an estimated street value of $280,000.

## II. Background Proceedings.

Immediately following the seizure of the marijuana, Predka was arrested and charged with possession with intent to deliver and failure to have a drug tax stamp. The State also served Predka with a notice that it was seeking forfeiture of his car and the cash Brooks found.

On August 11 the State filed a two-count trial information regarding the two charges. On September 30 Predka moved to suppress the evidence seized during the search on the grounds that the search and seizure violated the Fourth Amendment to the Federal Constitution. He also moved to dismiss the drug tax stamp charge on the grounds the charge violated the Commerce Clause of the Federal Constitution.

On October 18, following a hearing, the district court—Judge Rodney Ryan—entered judgment forfeiting Predka's car and the $2147 in cash.

On October 20 Predka moved to dismiss the criminal prosecution under the Federal Double Jeopardy Clause. He argued that continuation of the criminal prosecution after the forfeiture judgment placed him in double jeopardy.

Several months after Predka filed the motion to suppress and the two motions to dismiss, the district court—Judge Glenn E. Pille—denied all of them. Later, in a trial before Judge Joel D. Novak, a jury found Predka guilty on both counts. The court sentenced Predka to imprisonment for a period not more than (1) ten years on the possession with intent to deliver charge and (2) five years on the failure to possess a drug tax stamp charge. The court later reconsidered Predka's sentence and placed him on probation.

Predka appeals from the judgments of conviction and sentence.

## III. Scope of Review.

We review constitutional issues de novo, under the totality of the circumstances. *State v. Cunningham,* 463 N.W.2d 887, 889 (Iowa App.1990).

We generally review admissibility of evidence issues for abuse of discretion. We will reverse a district court's determination regarding admissibility of evidence only when we find a clear abuse of discretion. *State v. Roth,* 403 N.W.2d 762, 765 (Iowa 1987). We review jury instructions to determine whether they correctly state the law and are supported by substantial evidence. *Grefe & Sidney v. Watters,* 525 N.W.2d 821, 824 (Iowa 1994). Substantial evidence is such evidence as would convince a rational trier of fact of what is sought to be proven. *State v. Padavich,* 536 N.W.2d 743, 751 (Iowa 1995).

## IV. The Motion to Suppress.

Predka maintains Brooks stopped him without reasonable grounds. In the alternative Predka argues that even if Brooks had reasonable grounds to stop him, Brooks did not have grounds to search his car. Specifically, Predka asserts Brooks had neither probable cause nor consent to search. Predka concludes the district court should have suppressed all the evidence seized as a violation of his Fourth Amendment rights.

The Fourth Amendment to the Federal Constitution provides that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause...." U.S.

Const. amend. IV. Evidence obtained in violation of this provision is inadmissible, no matter how relevant or probative the evidence may be. *State v. Schrier,* 283 N.W.2d 338, 342 (Iowa 1979).

■ *A. The stop.* When the police stop a car and temporarily detain an individual, the temporary detention is a "seizure" within the meaning of the Fourth Amendment. This is true even though the detention is only for a brief period of time and for a limited purpose. *Whren v. United States,* —— U.S. ——, ——, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89, 95 (1996). Therefore "[a]n automobile stop is ... subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at ——, 116 S.Ct. at 1772, 135 L.Ed.2d at 95. Generally, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at ——, 116 S.Ct. at 1772, 135 L.Ed.2d at 95.

For Fourth Amendment purposes, the constitutional reasonableness of traffic stops does *not* depend on the actual motivation of the individual officers involved. *Id.* at ——, 116 S.Ct. at 1774, 135 L.Ed.2d at 97. In *Whren,* the Court rejected the argument that the Fourth Amendment test for traffic stops should be whether a police officer, acting reasonably, would have made the stop for the reason given. *Id.* at ——, 116 S.Ct. at 1775, 135 L.Ed.2d at 98. Instead, the Court made it clear that traffic stops are "governed by the usual rule that probable cause to believe the law has been broken 'outbalances' private interest in avoiding police contact." *Id.* at ——, 116 S.Ct. at 1777, 135 L.Ed.2d at 101.

In *Whren,* plainclothes policemen were patrolling a high drug area in an unmarked car. They saw a truck waiting at an intersection stop sign for an unusually long time. The truck then turned suddenly, without signaling, and sped off at an unreasonable speed. The officers stopped the truck, assertedly to warn the driver about traffic violations. Upon approaching the truck, one officer saw plastic bags of crack cocaine in one of the defendant's hands. The officers arrested the driver and the passenger and seized the drugs. The defendants argued that (1) the stop had not been justified by either a reasonable suspicion or probable cause to believe the defendants were engaged in illegal drug-dealing activity, and (2) the officer's traffic violation ground for approaching the truck was pretextual. The Supreme Court held the officers had probable cause because of the traffic violations. The Court decided it made no difference that the officer's traffic violation ground for approaching the truck was pretextual. *Id.* at ——, 116 S.Ct. at 1774, 135 L.Ed.2d at 97.

The Court made it clear that the Constitution prohibits selective enforcement of the law based on considerations such as race. However, as the Court pointed out, "the Constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment." *Id.* at ——, 116 S.Ct. at 1774, 135 L.Ed.2d at 98.

Recently, we had occasion to revisit probable cause to make an arrest. *See State v. Bumpus,* 459 N.W.2d 619 (Iowa 1990). We defined probable cause to make an arrest this way:

> Probable cause is not determined by observation of and reliance on any particular factor. Probable cause to make an arrest turns upon the circumstances of each case. The facts must give rise to something more than a mere suspicion, but they need not be so strong as to convince officers involved in the arrest of a suspect's guilt. Probable cause exists if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed and that the arrestee committed or is committing it.

*Id.* at 624 (citations omitted).

Predka contends Brooks offered several reasons why he stopped him, none of which gave the officer grounds to make the stop. He maintains the stop was only a pretext for intercepting drugs and all evidence seized after the stop should have been suppressed.

Brooks testified that he pulled Predka over for two legitimate traffic violations: Predka was speeding and he was not wearing his seat belt. *See* Iowa Code §§ 321.285, 321.445

(1993). On this point Brooks testified as follows:

Q. How was it that you happened to come in contact with Peter Predka? What happened? A. I was running stationary radar.

Q. What's that mean? Let me stop you right there. A. Standstill. The car was parked.

Q. Your car was? A. Yes. It was parked like at a 45–degree angle, mile marker 147 on I–80.

Q. What equipment were you using? A. It was a radar unit. I think it was a laser, the Pro Laser, but it could have been a regular radar. I was using a radar that day. Both the hand-held radar—the Pro Laser and the radar are hand-held.

. . . .

Q. With regard to Mr. Predka, what did you see? A. After I—when he drove by me at first?

Q. Tell the court what happened. A. Basically what happened, I clocked him approximately five miles over the speed limit. He was 70 in a 65. He was approximately 200 yards away, 250. I then looked at the radar, looked at him. I could see he didn't have a seat belt on.

Q. How could you see that? Tell the court, please. A. It's very easy, because if you're looking at somebody that's coming onto you, you will see the harness pulled down from the side of the car. And it makes a 45–degree angle. . . .

. . . .

Q. And when did you first observe that he didn't have a seat belt on? A. Probably when he got pretty close or even to me. You could see there was no gap at all when he was coming up.

Q. And the speed limit in the area was what? A. Speed limit there is 65.

Q. How fast was he going, according to the radar? A. According to radar, 70.

■ Predka vigorously contends he was not speeding and he was wearing his seat belt. In its suppression ruling, the district court noted it had the opportunity to observe the demeanor of the witnesses as they testified. The court concluded Brooks' version of the events was more credible. In our de novo review on this issue, we likewise find Brooks' version is more credible. As mentioned, we review constitutional issues de novo. Nevertheless, we give weight to the district court's findings on credibility. *Taylor v. State,* 352 N.W.2d 683, 687 (Iowa 1984).

■ Brooks had probable cause to stop and arrest Predka. Brooks observed Predka speeding and corroborated it through radar. He was also in a position to see that Predka was not wearing a seat belt. These facts would lead a reasonable and prudent person to believe Predka was committing a crime.

■ The district court correctly concluded the stop was not in violation of Predka's Fourth Amendment rights. And, even if we were to find the stop was pretextual, there was still no such violation because probable cause—not the motivation of the arresting officer—determines whether the stop is valid.

■ *B. The search.* When a defendant contests a warrantless search and seizure, the State has the burden to show that officers acted reasonably under one of the recognized exceptions to the warrant requirement articulated in *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967). Recognized exceptions include (1) consent search, (2) probable cause coupled with exigent circumstances, and (3) plain view. *State v. Vincik,* 436 N.W.2d 350, 353 (Iowa 1989). The State must prove one of these exceptions by a preponderance of the evidence. *State v. Bakker,* 262 N.W.2d 538, 546 (Iowa 1978).

Predka asserts Brooks' search of his car was not conducted under one of the established exceptions to the warrant requirement. The State contends Brooks' warrantless search was justified by (1) probable cause coupled with exigent circumstances, or, in the alternative, (2) Predka's consent to search.

Predka maintains Brooks did not have probable cause coupled with exigent circumstances to conduct the warrantless search of Predka's car. The State counters that a preponderance of evidence establishes

Brooks did have probable cause and exigent circumstances to support the search.

Brooks, a drug recognition expert, testified at the suppression hearing that when he reached Predka's car and looked in, he smelled a strong odor of both fresh-cut and burnt marijuana. The odor was coming from the interior of the car.

While standing at Predka's car, Brooks saw two large zip-lock bags of a yellow substance on the floor of the car. This struck the officer as odd. He later determined the yellow substance was urine. At trial a narcotics expert testified that drug couriers commonly urinate in zip-lock bags while driving. They do so to avoid having to stop and to avoid detection. At the same time Brooks saw the zip-locked bags, he also saw a box of plastic bags. He testified this was important to him because many drug dealers use "a lot of plastic bags."

After seeing the bags, Brooks asked Predka to step out of his car. While Predka was exiting his car, Brooks saw on the floor board what he described as ashes in a dime-sized screen. He recognized the screen as a device used with a marijuana pipe.

Predka accompanied Brooks to the patrol car without protest. On the way to the patrol car, Brooks asked Predka if he had been smoking marijuana. Predka replied he had not. Brooks testified that while Predka was in the patrol car, Predka appeared nervous and was breathing heavily.

Brooks then returned to Predka's car and searched the interior. He picked up the little screen he had earlier seen, smelled it, and recognized the smell as marijuana. Brooks' search of the interior revealed nothing more significant.

Brooks then returned to the patrol car and asked Predka if he could search the trunk of his car. According to Brooks, Predka said, "Sure." Although Predka vigorously denies giving his consent, he did sign a consent form. Predka claims he did not see what he was signing. He said he signed the form only after the trunk search was completed.

Upon opening the trunk, Brooks saw a blue backpack with currency wrapped in a rubber band sticking out from the bottom of the backpack. The backpack was unzipped. In his search of the trunk, Brooks also found six large bales of marijuana.

The automobile exception to the Fourth Amendment search warrant requirement applies if probable cause and exigent circumstances exist at the time the police stop the automobile. *State v. Edgington,* 487 N.W.2d 675, 678 (Iowa 1992). An officer has probable cause to search an automobile

> when the facts and circumstances would lead a reasonably prudent person to believe that the vehicle contains contraband. The facts and circumstances upon which a finding of probable cause is based include "the sum total ... and the synthesis of what the police have heard, what they know, and what they observe as trained officers."

*Id.* (citation omitted). Exigency is satisfied "when the car is mobile ... and the car's contents may never be found again if a warrant must be obtained." *Id.* (citation omitted).

We think the odor of marijuana emanating from Predka's car, his nervous state and heavy breathing, and Brooks' observation of the screen and plastic bags in the car gave Brooks probable cause to conduct a comprehensive search of the automobile. Given Brooks' training and experience, any reasonable person armed with these facts could believe Predka's car contained contraband. *See State v. Eubanks,* 355 N.W.2d 57, 59 (Iowa 1984) (odor emanating from interior of car afforded police officer probable cause to conduct comprehensive search of car); *State v. Olsen,* 293 N.W.2d 216, 220 (Iowa 1980) (nervousness when search of trunk was discussed was a legitimate circumstance to consider in determining probable cause to search).

Exigent circumstances existed because Predka's car was mobile and its contents could have been lost if a search warrant had to be obtained.

We conclude the district court correctly overruled Predka's motion to suppress under the probable cause and exigent circum-

stances exceptions. The conclusion we reach obviates our need to discuss the consent exception.

### V. *The Motions to Dismiss.*

A. *Double jeopardy.* Under the Double Jeopardy Clause of the Fifth Amendment to the Federal Constitution, no person "shall ... be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend V. The Double Jeopardy Clause protects individuals from (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969). The protection against multiple punishments prohibits the Government from "punishing twice, or attempting a second time to punish criminally, for the same offense." *Witte v. United States,* 515 U.S. ——, ——, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351, 361 (1995) (citation omitted).

The district court denied Predka's motion to dismiss the prosecution based on double jeopardy grounds. Following Predka's criminal trial and conviction, the district court also denied Predka's motion in arrest of judgment based on the same ground. Predka maintains these rulings were erroneous because he was subject to multiple prosecutions and multiple punishments when the civil forfeiture action was followed by the criminal prosecution. We disagree.

Predka relies heavily on two federal circuit court cases: *United States v. Ursery,* 59 F.3d 568 (6th Cir.1995) (*Ursery I* ), and *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994). The Supreme Court recently reversed *Ursery I* and *$405,089.23 U.S. Currency* in *United States v. Ursery,* —— U.S. ——, ——, 116 S.Ct. 2135, 2149, 135 L.Ed.2d 549, 570 (1996) (*Ursery II* ).

In *Ursery I,* the Government instituted a forfeiture proceeding under 21 U.S.C. § 881(a)(7) (1988) against Ursery's house. In the forfeiture proceeding, the Government alleged the house had been used to facilitate illegal drug transactions. Shortly before Ursery settled that claim, the Government indicted him on the charge of manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1). A jury later convicted Ursery of this charge.

The Sixth Circuit Court of Appeals, by a divided vote, reversed Ursery's conviction. The court held the conviction violated the Fifth Amendment Double Jeopardy Clause. The court based its decision in part on two recent United States Supreme Court cases: *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). The court believed these two decisions meant any civil forfeiture under 21 U.S.C. § 881(a)(7) constitutes punishment for purposes of the Double Jeopardy Clause. In the court's view, Ursery had therefore been "punished" in the forfeiture proceeding against the property and could not be subsequently criminally tried for violation of 21 U.S.C. § 841(a)(1). *Ursery I,* 59 F.3d at 573.

In *$405,089.23 U.S. Currency,* a jury convicted Arlt and Whren of (1) conspiracy to aid and abet the manufacture of methamphetamine, in violation of 21 U.S.C. § 846; (2) conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 371; and (3) numerous counts of money laundering, in violation of 18 U.S.C. § 1956. Both were imprisoned.

Before trial, the Government had filed a civil in rem proceeding against various property seized from, or titled to, Arlt and Whren, or a corporation Arlt controlled. The forfeiture complaint alleged each piece of property was subject to forfeiture under both 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6). Under 18 U.S.C. § 981(a)(1)(A), "[a]ny property ... involved in a transaction or attempted transaction in violation of" section 1956 (the money-laundering statute) "is subject to forfeiture to the United States." Under 21 U.S.C. § 881(a)(6), forfeitable property includes (1) "[a]ll ... things of value furnished or intended to be furnished by any person in exchange for" illegal drugs, (2) "all proceeds traceable to such an exchange," and (3) "all moneys, negotiable instruments, and securities used or intended to be used to

facilitate" a federal drug felony. The Government and the defendants agreed to defer litigation of the forfeiture proceeding during the criminal prosecution. Following the criminal jury trial, the district court granted the Government's motion for summary judgment in the civil forfeiture proceeding.

Arlt and Whren appealed the decision in the forfeiture proceeding, and the Ninth Circuit Court of Appeals reversed. The court held the forfeiture violated the Double Jeopardy Clause. *$405,089.23 U.S. Currency*, 33 F.3d at 1222. The court's reasoning was similar to that employed by the Sixth Circuit in *Ursery I*: The Supreme Court's decisions in *Halper* and *Austin* meant that, as a categorical matter, forfeitures under 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6) always constitute "punishment." *Id.* at 1219.

The Supreme Court granted the Government's certiorari petitions in *Ursery I* and *$405,089.23 U.S. Currency* and consolidated the two cases for review. In a June 1996 ruling, *Ursery II*, —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), the Court held the civil forfeitures in question (and civil forfeitures generally) do not constitute "punishment" for purposes of the Double Jeopardy Clause. *Id.* at ——, 116 S.Ct. at 2138, 135 L.Ed.2d at 557.

### 1. *Ursery II.*

In *Ursery II,* the Supreme Court began its analysis by pointing out that since the birth of this country "Congress has authorized the Government to seek parallel in rem civil forfeiture actions and criminal prosecutions based upon the same underlying events." *Id.* at ——, 116 S.Ct. at 2140, 135 L.Ed.2d at 559. The Court also pointed out that, in a long line of cases, it had consistently concluded the Double Jeopardy Clause does not apply to such in rem civil forfeitures. *Id.* at ——, 116 S.Ct. at 2140, 135 L.Ed.2d at 558. The Court singled out three of those cases for discussion: *Various Items of Personal Property v. United States,* 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558 (1931); *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (per curiam); and *United States v. One As-*

*sortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984).

*Various Items* was one of the first cases to consider the relationship between the Double Jeopardy Clause and civil forfeiture. In *Various Items,* the defendant corporation had been convicted of criminal violations *before* there had been a forfeiture of its property because of federal law violations. The criminal violations grew out of the same transactions that formed the basis for the forfeiture. The *Various Items* Court held the Double Jeopardy Clause inapplicable to civil forfeiture actions. The Court reasoned that

> [this] forfeiture proceeding . . . is in rem. It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient. In a criminal prosecution it is the wrongdoer in person who is proceeded against, convicted, and punished. The forfeiture is no part of the punishment for the criminal offense. The provision of the Fifth Amendment to the Constitution in respect of double jeopardy does not apply.

*Various Items,* 282 U.S. at 581, 51 S.Ct. at 284, 75 L.Ed. at 561 (citations omitted).

The Court in *Various Items* distinguished between in rem civil forfeitures and in personam civil penalties as fines. The Court concluded civil penalties could, in some circumstances, be punitive in character and therefore barred by a prior conviction for a criminal offense involving the same transactions. On the other hand, the Court concluded, civil forfeitures could never be considered punitive. *Id.* at 580, 51 S.Ct. at 283, 75 L.Ed. at 561.

Continuing with the trilogy of double jeopardy cases, the Court in *Ursery II* noted that until *One Lot Emerald*—some forty years later—the Court had not considered another double jeopardy case involving a civil forfeiture. In *One Lot Emerald,* the defendant was acquitted of smuggling jewels into this country. Later, he intervened in a proceeding to forfeit the jewelry as contraband. Rejecting the owner's double jeopardy claim, the Court in *One Lot Emerald* held the forfeiture was not barred because it neither

involved two criminal trials nor two criminal punishments. *One Lot Emerald,* 409 U.S. at 235, 93 S.Ct. at 492, 34 L.Ed.2d at 442. Reaffirming the principle in *Various Items,* the Court in *One Lot Emerald* determined the forfeiture was a civil sanction, not a criminal punishment. In reaching this conclusion, the Court noted the forfeiture provisions had been codified separately from parallel criminal provisions. *Id.* at 236, 93 S.Ct. at 492–93, 34 L.Ed.2d at 443.

*One Assortment* was the last in the trilogy of double jeopardy cases dealing with civil forfeiture that *Ursery II* discussed. In *One Assortment,* the owner of the defendant weapons was acquitted of dealing firearms without a license. Later, the Government filed a forfeiture action against the firearms under 18 U.S.C. § 924(d). The Government alleged the firearms were used or intended to be used in violation of federal law. The Court in *One Assortment* held the prior criminal proceeding did not bar the forfeiture. In reaching this conclusion, the Court developed a two-part test for determining when an in rem forfeiture qualifies as punishment: (1) Did Congress intend the forfeiture to be criminal and punitive, or civil and remedial? (2) Is the scheme so punitive in purpose or effect as to negate Congress' intent to establish a civil remedial mechanism? *One Assortment,* 465 U.S. at 363, 104 S.Ct. at 1105, 79 L.Ed.2d at 368.

As to the first step, the Court in *One Assortment* concluded, for three reasons, that Congress designed forfeiture under section 924(d) as a remedial civil sanction. First, the action was in rem; traditionally actions in rem have been viewed as civil proceedings, with jurisdiction depending upon the seizure of a physical object. Second, because the forfeiture proceedings reached both weapons used in violation of federal law and those "intended to be used" in such manner, the proceedings reached a broader range of conduct than their criminal analogue. Last, the forfeiture proceedings furthered broad remedial aims. These aims included (1) discouraging unregulated commerce in firearms, and (2) removing from circulation firearms that have been used or were intended for use outside regulated

channels of commerce. *Id.* at 364, 104 S.Ct. at 1105–06, 79 L.Ed.2d at 369.

As to the second step, the Court in *One Assortment* concluded the owner of the guns had failed to prove Congress had provided a sanction so punitive as to transform what was clearly intended as a civil remedy into a criminal penalty. In reaching this conclusion, the Court considered several factors it had used in the past to determine "whether a civil proceeding was so punitive as to require application of the constitutional protections necessary in a criminal trial." *Id.* at 365, 104 S.Ct. at 1106, 79 L.Ed.2d at 370. The Court found only one of those factors present in the section 924(d) forfeiture: the behavior proscribed by the forfeiture was already a crime. The Court concluded this factor alone was not enough to turn the forfeiture into a punishment subject to the Double Jeopardy Clause. *Id.* at 366, 104 S.Ct. at 1107, 79 L.Ed.2d at 370.

Using this two-part test as a framework for analysis, the Court in *Ursery II* had little trouble concluding Congress intended the forfeiture statutes in question (21 U.S.C. §§ 881(a)(6) and (a)(7) and 18 U.S.C. § 981(a)(1)(A)) to be civil proceedings. To support its conclusion, the Court pointed to the procedural mechanisms Congress established for enforcing forfeitures under these two statutes: the statutes provide that forfeiture provisions for violating customs laws should apply. Forfeiture proceedings under the customs laws are in rem. So Congress intended forfeiture under the statutes in question would be in rem. The property—rather than the defendant—would be the target of the proceeding, with jurisdiction depending on the seizure of a physical object. *Id.* at ——, 116 S.Ct. at 2147, 135 L.Ed.2d at 567.

In *Ursery II,* the Court looked to other procedural mechanisms governing forfeiture under the two forfeiture statutes in question to support its conclusion that Congress intended proceedings under these statutes to be civil. For example, 19 U.S.C. § 1607 provides that actual notice of the impending forfeiture is not necessary under either forfeiture statute when the Government cannot identify any party with an interest in the

seized property. Also, 19 U.S.C. § 1615 governs both forfeiture statutes. This section provides that once the Government has shown probable cause that the property is subject to forfeiture, the burden of proof shifts to the claimant. Because both procedures are distinctly civil, the Court thought Congress had indicated clearly it intended a civil, rather than a criminal, sanction. *Id.* at ——, 116 S.Ct. at 2147, 135 L.Ed.2d at 567.

The Court in *Ursery II* stopped short of holding that in rem civil forfeiture is per se exempt from the Double Jeopardy Clause. Rather the Court held Congress' action in (1) designating the forfeiture as civil and (2) providing that the action proceed in rem "establishes a presumption that it is not subject to double jeopardy." *Id.* at —— n. 3, 116 S.Ct. at 2148 n. 3, 135 L.Ed.2d at 569 n.3. The Court, however, cautioned that "where the 'clearest proof' indicates that an in rem civil forfeiture is 'so punitive either in purpose or effect' as to be equivalent to a criminal proceeding, that forfeiture may be subject to the Double Jeopardy Clause." *Id.* at —— n. 3, 116 S.Ct. at 2148 n. 3, 135 L.Ed.2d at 569 n. 3.

In the second step of the two-step analysis, the Court in *Ursery II* found "there is little evidence, much less the 'clearest proof' that we require, suggesting that forfeiture proceedings under 21 U.S.C. §§ 881(a)(6) and (a)(7), and 18 U.S.C. § 981(a)(1)(A), are so punitive in form and effect as to render them criminal despite Congress' intent to the contrary." *Id.* at ——, 116 S.Ct. at 2148, 135 L.Ed.2d at 569 (citations omitted). The Court noted the two forfeiture statutes in question "are, in most significant respects, indistinguishable from those reviewed, and held not to be punitive, in *Various Items, Emerald Cut Stones,* and *89 Firearms." Id.* at ——, 116 S.Ct. at 2148, 135 L.Ed.2d at 569.

The Court, however, believed the two forfeiture statutes in question did have certain punitive aspects. Nevertheless, the Court concluded the statutes "serve important nonpunitive goals." *Id.* at ——, 116 S.Ct. at 2148, 135 L.Ed.2d at 569. For example, "[r]equiring the forfeiture of property used to commit federal narcotics violations encourages property owners to take care in managing their property and ensures that they will not permit that property to be used for illegal purposes." *Id.* at ——, 116 S.Ct. at 2148, 135 L.Ed.2d at 569.

In addition, the Court in *Ursery II* looked to four other considerations to support its conclusion that the forfeiture statutes in question are civil, not criminal, proceedings. First, the Court noted historically it had not considered in rem civil forfeiture as punishment, as the Court has understood the term under the Double Jeopardy Clause. *Id.* at ——, 116 S.Ct. at 2138, 135 L.Ed.2d at 556.

Second, the two forfeiture statutes in question do not require the Government to establish scienter in order to establish the property is subject to forfeiture. A trial court may subject the property to forfeiture even though no party files a claim to it and the Government does not show any connection between the property and a particular person. Although both statutes have an "innocent owner" exception, the Court did not think such a provision, without more indication of an intent to punish, "is relevant to the question whether a statute is punitive under the Double Jeopardy Clause." *Id.* at ——, 116 S.Ct. at 2149, 135 L.Ed.2d at 570.

Third, though both statutes can be said to serve a deterrent purpose, the Court noted it has "long ... held that this purpose may serve civil as well as criminal goals." *Id.* at ——, 116 S.Ct. at 2149, 135 L.Ed.2d at 570. Last,

> though both statutes are tied to criminal activity ... this fact is insufficient to render the statutes punitive. It is well settled that "Congress may impose both a criminal and a civil sanction in respect to the same act or omission." By itself the fact that a forfeiture statute has some connection to a criminal violation is far from the "clearest proof" necessary to show that a proceeding is criminal.

*Id.* at ——, 116 S.Ct. at 2149, 135 L.Ed.2d at 570–71 (citations omitted).

In *Ursery II* the Court spent a good deal of time distinguishing *Halper* and *Austin,* as well as *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. ——, 114 S.Ct.

1937, 128 L.Ed.2d 767 (1994). As mentioned, the Sixth and Ninth Circuit Courts of Appeal relied heavily on both *Halper* and *Austin.* The Court in *Ursery II* commented that the two circuit courts had simply misread *Halper* and *Austin.* The Court explained away *Halper, Kurth Ranch,* and *Austin* by stating:

> In sum, nothing in *Halper, Kurth Ranch,* or *Austin,* purported to replace our traditional understanding that civil forfeiture does not constitute punishment for the purpose of the Double Jeopardy Clause. Congress long has authorized the Government to bring parallel criminal proceedings and civil forfeiture proceedings, and this Court consistently has found civil forfeitures not to constitute punishment under the Double Jeopardy Clause. It would have been quite remarkable for this Court both to have held unconstitutional a well-established practice, and to have overruled a long line of precedent, without having even suggested that it was doing so. *Halper* dealt with *in personam* civil penalties under the Double Jeopardy Clause; *Kurth Ranch* with a tax proceeding under the Double Jeopardy Clause; and *Austin* with civil forfeitures under the Excessive Fines Clause. None of those cases dealt with the subject of this case: *in rem* civil forfeitures for purposes of the Double Jeopardy Clause.

*Id.* at ——, 116 S.Ct. at 2147, 135 L.Ed.2d at 567–68.

Turning to our own forfeiture statute, we likewise employ the two-step analysis referred to in *Ursery II* in determining whether the statute constitutes punishment under the Federal Double Jeopardy Clause.

### 2. Employing the Ursery II two-step analysis: Iowa's forfeiture statute.

a. *Did the Iowa legislature intend proceedings under Iowa's forfeiture statute to be criminal or civil?* Like the federal forfeiture statutes in *Ursery II,* we think the Iowa legislature intended forfeitures under Iowa's forfeiture statute to be civil proceedings. This intent is borne out by the procedural mechanisms the legislature established for enforcing forfeitures under the statute. For example, Iowa Code section 809.11(1) expressly provides that (1) forfeiture is a civil proceeding; (2) the burden of proof is on the state to prove by a *preponderance* of the evidence that the property is forfeitable; (3) forfeiture is not dependent upon a prosecution for, nor conviction of, a criminal offense; and (4) forfeiture proceedings are separate and distinct from any related criminal action. In addition, court appointed counsel at the state's expense is not available in forfeiture proceedings. Iowa Code § 809.11(2).

Under our forfeiture statute, the defendant in forfeiture proceedings is the property sought to be forfeited, not its owner. *In re Property Seized From Hickman,* 533 N.W.2d 567, 568 (Iowa 1995). The proceeding is in rem and the judgment in rem operates upon the property itself. *Id.* So the legislature structured the forfeiture statute to be impersonal by targeting the property itself. In contrast, criminal actions are in personam.

b. *Is Iowa's statutory forfeiture scheme so punitive either in form or effect as to negate the legislature's intention to establish a civil remedial mechanism?* For the following reasons, we think there is scant evidence that our forfeiture statute is so punitive in form and effect as to render it criminal despite the legislature's intent to the contrary. No doubt Iowa Code chapter 809 has some punitive aspects. We have recognized as much in our cases. *See, e.g., In re Wagner,* 482 N.W.2d 160, 162 (Iowa 1992) ("Although the forfeiture statutes in chapter 809 are not criminal statutes, they are *penal* in nature and must be strictly construed.") (emphasis added).

Nevertheless we think Iowa Code chapter 809 serves important nonpunitive goals. For example, Iowa Code section 809.1(2)(b) defines "forfeitable property" to include "[p]roperty which has been used or is intended to be used to facilitate the commission of a criminal offense or to avoid detection or apprehension of a person committing a criminal offense." Requiring forfeiture of such property encourages property owners to take care in managing their property and ensures they will not permit that property to be used for illegal purposes.

In addition, Iowa Code section 809.1(2)(c) defines "forfeitable property" to include "[p]roperty which is acquired as or from the proceeds of a criminal offense." As applied to the facts here, to the extent this definition applies to "proceeds" of illegal drug activity, our forfeiture statute serves the nonpunitive goal of ensuring that persons do not profit from their illegal acts.

Two other factors support our conclusion that our forfeiture statute is not punishment for purposes of the Federal Double Jeopardy Clause. First, traditionally in this state, "forfeiture was considered a civil proceeding to which jeopardy would not attach, rather than a criminal proceeding to which jeopardy protections would apply." *State v. McFarlin*, 542 N.W.2d 559, 561 (Iowa 1996). In *McFarlin*, we misread *Halper, Austin,* and *Kurth Ranch* as "revok[ing] this premise and recogniz[ing] the 'punishment' nature of forfeiture proceedings our earlier cases rejected, thereby introducing the jeopardy ingredients we had found lacking." *Id.* As it turns out, our earlier cases were right: *Halper, Austin,* and *Kurth Ranch* did not revoke the traditional view in this state that forfeiture was considered a civil proceeding to which jeopardy would not attach.

Second, our forfeiture statute has no requirement that the state must show scienter in order to establish the property is subject to forfeiture. The court may subject the property to forfeiture even though no party files a claim to it and the state never shows any connection between the property and a particular person. *See* Iowa Code § 809.10(1) ("If no application for the return of forfeitable property is timely made pursuant to section 809.9, upon application of the attorney for the state, the clerk shall enter an order transferring title to the state.").

Like the federal statutes in *Ursery II*, our forfeiture statute has an "innocent owner" defense. *See* Iowa Code § 809.14(1). As the Supreme Court held in *Ursery II*, we do not think such a provision, without more indication of an intent to punish, is relevant to the question whether a statute is punitive under the Federal Double Jeopardy Clause.

Our forfeiture statute, like the statutes in *Ursery II*, ties the forfeiture to criminal activity. *See* Iowa Code § 809.1. And, as the Supreme Court held in *Ursery II* with respect to the federal forfeiture statutes, this fact by itself is far from the proof necessary to show a proceeding is criminal in form and effect.

■ Based on the foregoing analysis, we conclude Iowa's civil in rem forfeiture statute is neither "punishment" nor criminal for purposes of the Federal Double Jeopardy Clause. Contrary to Predka's contention, we therefore conclude he was not subject to multiple prosecutions or multiple punishments when the State prosecuted him following the civil forfeiture action.

B. *The Federal Commerce Clause.* Before trial, Predka moved to dismiss the charge of failure to have drug tax stamps affixed to a controlled substance. He alleged the drug tax stamp statute violates the Federal Commerce Clause. The district court denied the motion and properly so.

Under the Federal Commerce Clause, Congress has the power "to regulate commerce . . . among the several states." U.S. Const. art. 1, § 8, cl. 3. As we understand Predka's argument, the tax in question could not constitutionally be imposed on property in transit. Therefore, the state could not predicate a criminal charge on a failure to comply with an unconstitutional tax law.

■ Like the district court, we think the Commerce Clause does not protect commerce in contraband. The Supreme Court long ago held that property which is subject to seizure under the state's police power cannot be regarded as a proper article of commerce protected by the Commerce Clause. *Ziffrin, Inc. v. Reeves,* 308 U.S. 132, 139, 60 S.Ct. 163, 167, 84 L.Ed. 128, 135 (1939) (rejecting Commerce Clause challenge to statute (1) making it unlawful to possess intoxicants except under very limited circumstances and (2) declaring intoxicants that a person unlawfully possesses contraband subject to seizure); 15A Am. Jur. 2d *Commerce* § 36, at 367 (1976) ("Although, generally speaking, anything that can be bought and sold is a subject of commerce, things which are injurious to the public lose the benefit of

protection as articles of commerce and are within the police power of the state.").

Iowa Code section 124.401(1) makes it unlawful for any person to possess with intent to deliver a controlled substance. Subsection (c)(5) of section 124.401(1) makes such possession a class "C" felony if the defendant possesses more than fifty kilograms but not more than one hundred kilograms of marijuana.

Iowa Code section 124.506(1) subjects to forfeiture all controlled substances that a person unlawfully possesses. Iowa Code chapter 809 deals with the disposition of seizable and forfeitable property. Iowa Code section 809.1(1)(b) defines seizable property to include property defined by law to be forfeitable. Iowa Code section 809.1(2)(a) defines forfeitable property to include property that a person illegally possesses.

Given the injurious nature of controlled substances, it was well within the state's police powers to enact all of these statutes.

■ Here Predka unlawfully possessed a controlled substance, marijuana, with intent to deliver. The 140 pounds of marijuana found in his possession was therefore contraband, that is, property that is unlawful to possess. The marijuana was also subject to seizure and forfeiture. As such, the marijuana was not a proper article of commerce and was therefore not protected by the Commerce Clause.

### VI. *Proposed Jury Instruction.*

The range of felonies chargeable for possession of a controlled substance with intent to deliver under Iowa Code chapter 124 is determined by the weight of the drug confiscated. Predka was charged with a class "C" felony for his possession of over 50 kilograms of marijuana, a controlled substance. The district court instructed the jury on the class "C" felony and also on the pertinent lesser included offenses.

Predka maintains that, before the jury could consider the appropriateness of finding him guilty of any of the lesser included offenses, it needed the specific definition of marijuana articulated in Iowa Code section 124.101(17):

"Marijuana" means all parts of the plants of the genus cannabis, whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin, including tetrahydrocannabinols. *It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil or cake or the sterilized seed of the plant which is incapable of germination.*

(Emphasis added.)

Predka believes the jury needed this definition to determine whether the State had proven he possessed with the intent to deliver more than fifty kilograms of marijuana. He contends the district court's refusal to give this instruction denied the jury essential information on the charge and denied him the opportunity to be convicted of a lesser included offense. The gist of Predka's argument is that, if the court had given the jury the instruction he requested, the jury could have found he possessed something less than fifty kilograms of marijuana.

The district court denied Predka's request because the court thought there was no evidence in the record to justify giving it. We agree.

■ The jury heard unrefuted testimony that Predka possessed 143 pounds of compacted, high-grade marijuana when he was arrested. (Fifty kilograms equal approximately 110 pounds.) A lab report in evidence corroborates this testimony. There was no evidence suggesting the seized marijuana contained mature stalks, fiber, oil, cake, or sterilized seeds. To the contrary, the testimony was that there were no stalks. Because there was no evidence to support this instruction, the district court was not required to give it. *See State v. Lamar,* 210 N.W.2d 600, 606 (Iowa 1973) (district court not required to instruct jury on any issue having no evidentiary support in the record).

## VII. *Excluded Evidence.*

Finally, Predka contends the district court should have allowed him to introduce evidence that it was impossible for him to purchase drug tax stamps when he was traveling across Iowa. His journey through this state occurred on a Saturday. It is undisputed that the state revenue office, where tax stamps can be purchased, is closed on Saturdays. Although Predka concedes special arrangements can be made to have a drug tax stamp sent to a state office near the Iowa border, he argues these arrangements must be made well in advance.

 The State retorts the district court properly excluded this proffered testimony as irrelevant because the offer failed to generate an impossibility defense. We agree.

We rejected a similar impossibility argument in *State v. White,* 545 N.W.2d 552, 556 (Iowa 1996) (en banc). Iowa Code section 453B.7 requires a dealer to permanently affix the stamp on the taxable substance *immediately* after the dealer receives the taxable substance. We held "immediately" meant "without interval of time: without delay" and did not include "within a reasonable time," a meaning for which the defendant argued. We reasoned that

> [the administrative rules implementing Iowa Code section 453B.3 (prohibiting dealer from possessing or selling taxable substance unless the tax has been paid)] contemplate[ ] that stamps will be purchased prior to the regulated transaction. Moreover, because the tax stamps may be purchased at any time and refunds may be obtained on unused stamps without any fear of reprisal, the need for a window of opportunity to purchase tax stamps and affix them after the transaction does not exist. *Thus, it is not impossible to comply with the statute if it is interpreted to require that the tax stamps be affixed at the very time of acquisition.*

*White,* 545 N.W.2d at 556 (emphasis added).

Under our reasoning in *White,* the district court did not abuse its discretion when it rejected Predka's proffered evidence. As part of Predka's offer of proof, an Iowa Department of Revenue employee testified that drug dealers may obtain tax stamps by mail or by making arrangements in advance to pick up the stamps in any revenue office in the state. Prior to his trip across Iowa, Predka could have and should have had the stamps mailed to him or made arrangements to pick them up before he picked up the marijuana. Predka offered no reason why he was unable to comply with any of these alternatives. As one court has found, we think the impossibility argument in this context is spurious. *See Hyatt v. State Dep't of Revenue,* 597 So.2d 716, 719 (Ala.Civ.App. 1992).

 To be admissible, the proffered evidence must be relevant to a material issue that has been raised. Put another way, the proffered evidence must tend to establish some legitimate issue in the case. *State v. Roth,* 403 N.W.2d 762, 765 (Iowa 1987). There was no such evidence in this case.

## VIII. *Disposition.*

In summary, we conclude as follows. The officer had probable cause to stop Predka's car. He also had probable cause coupled with exigent circumstances to search it.

Iowa's forfeiture statute provides for civil, not criminal proceedings. A forfeiture pursuant to this statute does not constitute "punishment" nor is it criminal for the purposes of the Federal Double Jeopardy Clause.

The marijuana seized from Predka was contraband and subject to seizure and forfeiture. As such, the marijuana was not a proper article of commerce and was therefore not protected by the Commerce Clause.

There was no record evidence to support giving Predka's requested jury instruction.

Predka's proffered evidence was irrelevant because it failed to generate an impossibility defense.

We therefore conclude the district court correctly overruled Predka's motion to suppress and motions to dismiss. In addition, the court committed no error when it refused to give Predka's requested jury instruction. The court did not abuse its discretion when it excluded Predka's proffered evidence.

We have considered all of Predka's arguments, whether we have discussed them or

not, and we find them without merit. We therefore affirm.

**AFFIRMED.**