# IN THE COURT OF APPEALS OF IOWA

No. 16-0834
Filed August 16, 2017

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**ASADA SHAKUR MOORE,**
 Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Carol L Coppola (motion to suppress) and William A. Price (trial and sentencing), District Associate Judges.

The defendant appeals from her convictions and sentences for driving while barred, as an habitual offender, and assault on a peace officer. **AFFIRMED.**

Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., Potterfield, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**POTTERFIELD, Judge.**

Asada Moore appeals from her convictions and sentences for driving while barred, as an habitual offender, and assault on a peace officer. She claims the district court was wrong to deny her motion to suppress because the stop of her vehicle was not supported by probable cause, the trial and sentencing judge should have recused himself, and there is insufficient evidence to support her conviction for driving while barred.

## I. Background Facts and Proceedings.

In the early morning hours of April 25, 2015, Urbandale Police Officer Eric Wilcutt and other officers were working for the Central Iowa Traffic Safety Task Force Unit. The unit was "doing a saturation patrol" due to Drake Relays and a large concert both taking place in the same area. At approximately 1:15 a.m., Officer Wilcutt noticed a vehicle that he believed was traveling at a higher rate than the posted speed limit. He began to follow the vehicle and then noticed the vehicle's license plate frame was partially covering the county on the vehicle's license plate. Officer Wilcutt initiated a traffic stop based on the obstructed view of the license plate. When he made contact with the driver, Moore, he learned she was barred from driving. Moore had a temporary restricted license, but those restrictions only allowed her to drive to work and back. Moore admitted she was picking up intoxicated friends from the concert. As a result, Officer Wilcutt arrested Moore; she was charged with driving while barred, as an habitual offender.

Moore filed a motion to suppress, claiming the officer did not have reasonable suspicion or probable cause to stop her on the morning in question. The matter proceeded to hearing in August.

At the hearing, Moore questioned why the officer did not have a photograph of the license plate to show how the lettering was obstructed. She also challenged whether the officer had probable cause to stop when he was able to relay the necessary information—the license plate's identifying numbers and letters—to dispatch. The court, ruling from the bench, denied Moore's motion to suppress. In doing so, the court explicitly found Officer Wilcutt's testimony regarding his reason for initiating the stop credible, noting "He did, in fact, advise [Moore] at the time that that was the reason that he stopped [her]."

The underlying charge proceeded to a jury trial in March 2016. At the time set for trial, Moore asked the judge to recuse himself. She reported she had worked at a care center where the judge's wife was a patient approximately eighteen months before. Moore maintained she often spoke with the wife, had brought meals in when the judge was with his wife, and had contact with the judge through her employment "more than ten times."[1] When asked additional questions, Moore stated, "I have met him before. You know, I came in the room. I talked to you a couple times, but I'm not saying—I have talked to you guys. Brought you all food in there. Sat back and talked and I always had conversations with your wife." The judge denied the recusal motion, stating:

---

[1] Moore's attorney also indicated he believed the judge should recuse himself because he "made some statements in our motion to continue on March 11th that questioned my commitment to this case as an attorney." Moore has not re-raised these concerns on appeal.

I have no—other than the fact that my wife was at [the nursing home], I have no reason—and I certainly have no reason to disbelieve Ms. Moore that our paths did cross there. But I had no recollection of it before she raised it. And the fact that she raised it, I have no recollection. There was not—there were no issues with [the nursing home] or the care my wife received. I don't know how many caregivers she had out there. I mean, she was there for a week or ten days following release from the hospital . . . .

Following the trial by jury, Moore was convicted of driving while barred.

Moore was charged by trial information with assault on a peace officer in an unrelated matter. She ultimately pled guilty, and sentencing for both the assault conviction and the driving-while-barred conviction was scheduled for May 13, 2016.

The same judge who presided over the trial sentenced Moore. Moore received a suspended two-year sentenced for driving while barred, as an habitual offender, and was placed on probation. She was sentenced to a term of incarceration not to exceed one year, with all but seventy-five days suspended, for assaulting a peace officer.

Moore appeals.

## II. Discussion.

### A. Motion to Suppress.

Moore maintains the district court should have granted her motion to suppress. She claims Officer Wilcutt did not have probable cause to stop her vehicle because he was "clearly able to read and relay the plate information to dispatch." She also claims the officer's stated reason for the stop was pretextual and his "obvious goal was to investigate an OWI crime for which he had no basis to initiate the stop." We review the district court's denial of Moore's motion to

suppress de novo. *See State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001). "[W]e 'make an independent evaluation of the totality of the circumstances as shown by the entire record.'" *Id.* (quoting *State v. Howard*, 509 N.W.2d 764, 767 (Iowa 1993)). "We give deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses, but we are not bound by those findings." *Id.*

We take up Moore's second argument first. Moore maintains the officer's stated purpose for stopping her was pretextual because the purpose of the unit he was working with on the morning in question was to find intoxicated drivers. But we note the district court explicitly found credible Officer Wilcutt's testimony that he initiated the stop due to the obstructed view of the license plate. We are not bound by the district court's findings, but nothing in this record leads us to a different conclusion regarding the officer's testimony. Additionally, even if we were to find the stop was pretextual, that alone would not invalidate the stop. *See State v. Predka*, 555 N.W.2d 202, 206 (Iowa 1996). It is the existence of probable cause—not the motivation of the arresting officer—that determines whether the stop is valid. *Id.*; *cf. State v. Harrison*, 846 N.W.2d 362, 371 (Iowa 2014) (Appel, J., dissenting) (noting that while pretextual stops are not invalid under the United States Constitution according to *Whren v. United States*, 517 U.S. 806, 812–16 (1996), "the issue of whether *Whren* is good law under the Iowa Constitution when a traffic stop is based on pretext" has never directly been considered by the Iowa Supreme Court). Thus, we must determine if the officer had probable cause to stop the vehicle based on the license plate frame partially covering the county.

"When a peace officer observes a traffic offense, however minor, the officer has probable cause to stop the driver of the vehicle." *Harrison*, 846 N.W.2d at 365. Iowa Code section 321.37(3) (2015) makes it "unlawful for the owner of a vehicle to place any frame around or over the registration plate which does not permit full view of all numerals and letters printed on the registration plate." In *Harrison*, our supreme court ruled that "all number and letters" that must be in "full view" include the county name. 846 N.W.2d at 368 ("The language 'all numerals and letters' unambiguously requires drivers to display all information printed on the license plate, including the county name."). While Moore attempts to distinguish her facts by pointing out that the county was only "partially covered" and the officer was able to relay the necessary information to dispatch, we are unpersuaded. Partially covered is not "full view," as required be section 321.37(3). Moreover, while the partial covering of the county name did not prevent the officer from relaying the necessary information to dispatch, our supreme court already acknowledged that covering the county name does not prevent the officer from conducting a license plate check. *See id.* at 369 ("Although the county name is not necessary to conduct a license plate check, it can be useful to help law enforcement track down a vehicle driven by someone who has been observed breaking the law.").

Because the partial covering of the county name on the license plate is a violation of section 321.37(3) and the officer witnessed the violation, Officer Wilcutt had probable cause to initiate the stop. The district court properly denied Moore's motion to suppress.

**B. Recusal.**

Moore maintains the trial judge abused his discretion when he denied her motion asking him to recuse himself before the trial began. Additionally, she claims counsel was ineffective for not raising the issue again before the same judge pronounced sentence.

*1. Trial.* "We review a judge's recusal decision for an abuse of discretion." *State v. Millsap*, 704 N.W.2d 426, 432 (Iowa 2005). We note there are also "constitutional overtones to a recusal decision in a criminal case because the Due Process Clause requires an impartial judge." *Id.* The test for disqualification is an objective one, and the burden of showing grounds for recusal is on the party seeking recusal. *Id.*

Here, Moore relies on Iowa Code of Judicial Conduct rule 51:2.11(A).[2] The rule requires a judge to "disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Moore makes no argument; she simply claims that a reasonable person would conclude that the judge's impartiality may reasonably be questioned in these circumstances. We disagree. The judge stated he had no independent memory of ever having met Moore before the criminal proceedings began. This statement by the judge was

---

[2] When asking the judge to recuse himself before the trial began, trial counsel also relied on rule 51:2.11(A)(2)(a), which provides that a judge must recuse himself when he or his spouse "or a person within the third degree of relationship to either of them" is a party to the proceeding. That argument has not been raised on appeal, and we note that there is nothing in the record that suggests Moore was a family member within the scope of disqualification. *See* 16 Gregory C. Sisk & Mark S. Cady, *Iowa Practice Series*: *Lawyer and Judicial Ethics* § 19:4(b)(4) (July 2016) ("A person within the third degree of relationship includes great grandparents, grandparents, parents, uncles, aunts, brothers, sisters, children, grandchildren, great grandchildren, nephews, and nieces. Thus, this rule defines the scope of family members that may create grounds for disqualification. Disqualification ultimately depends on the specific connection of that family member to the case.").

buttressed by the fact that when defense counsel initially raised the issue, the judge understood Moore to be one of the in-home caretakers who had assisted his wife. Moore had to clarify that she had worked for the nursing home and spent time with the judge's spouse there. Additionally, the judge stated there were no issues or concerns regarding the care his wife received, and he had no negative feelings toward Moore's employer or those individuals who had provided the care. As the judge stated, he is "not precluded from hearing a matter because [his] wife talked to somebody at a nursing home that [he] was never a party to any conversation with." The judge did not abuse his discretion when he denied Moore's request that he recuse himself.

*2. Sentencing.* The same judge pronounced Moore's sentence. Trial counsel did not raise the issue of recusal again, which Moore now claims was ineffective assistance. We have already found the district court did not abuse its discretion when it denied Moore's first motion for recusal, and counsel had no duty to raise the meritless issue again. *See State v. Fannon*, 799 N.W.2d 515, 520 (Iowa 2011). Thus, Moore's claim of ineffective assistance fails. *See State v. Frencher*, 873 N.W.2d 281, 284 (Iowa Ct. App. 2015).

**C. Sufficiency of the Evidence: Driving while Barred.**

Moore claims the State presented insufficient evidence to support her conviction for driving while barred. Specifically, she claims there was not substantial evidence the department of transportation (DOT) had sent her notice that she was barred from driving. The crime of driving while barred contains no element that the habitual offender be notified by mail. *See State v. Williams*, 16-0894, slip op. at *7 (Iowa Ct. App. Aug. 16, 2017) (en banc); *compare* Iowa Code

§§ 321.560, 321.561, *with* Iowa Code §§ 321.210, 321.218. However, the jury was instructed it was required to find proof of mailing in this case, and the marshaling instruction binds this court on appeal. *See State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988) ("Failure to timely object to an instruction not only waives the right to assert error on appeal, but also 'the instruction, right or wrong, becomes the law of the case.'" (citations omitted)).

We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Leckington*, 713 N.W.2d 208, 212–13 (Iowa 2006). "When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State, including legitimate inferences and presumptions which may fairly and reasonably be deduced from the evidence in the record." *Id.* at 213.

Here, the State presented testimony from Rianna Lane, an assistant at the DOT. Through her testimony, the State offered two certificates of bulk mailing showing 196 items and 639 items were mailed first class on July 25, 2011. Additionally, the State introduced the "Post Office Report" from the DOT that listed the 835 items that were mailed.[3] Moore's notice was listed on the "Post Office Report" along with her most recent address and the sanction number of the notice that was being sent to her. The sanction number on the report corresponded with the sanction number on the notice that was in the driving file. *Cf. State v. Johns*, No. 14-1435, 2015 WL 4935703, at *1 (Iowa Ct. App. Aug. 19,

---

[3] We note that we have only an incomplete, redacted copy of the exhibit, but while the State was questioning Lane, she testified about the complete report without objection from the defense, indicating it was a list from the United States Postal Service listing the 835 pieces of mail that were sent that day by the DOT.

2015) (reversing for failure to prove notice had been given when the State presented evidence of a bulk mailing of 327 pieces of mail but had nothing to show the defendant's notice was one of those pieces of mail). Viewing the evidence in the light most favorable to the State, there is substantial evidence the DOT sent Moore the notice.[4]

**III. Conclusion.**

Because the officer had probable cause to initiate a stop of Moore's vehicle, the district court properly denied Moore's motion to suppress. The trial judge did not abuse his discretion when he denied Moore's motion to have him recuse himself, and counsel was not ineffective for failing to renew the motion before sentencing. Finally, sufficient evidence supports Moore's conviction for driving while barred. We affirm.

**AFFIRMED.**

---

[4] In reaching this conclusion, we do not consider the "affidavit of mailing" the State introduced into evidence. The exhibit was not dated, not attached to anything at the time it was offered, did not have anything to show it corresponded to Moore's notice, and, as Lane admitted, was a boilerplate form kept "in a separate folder, which is all of our proof of mailing."