# IN THE COURT OF APPEALS OF IOWA

No. 19-1301
Filed September 2, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BRIANNA KAY HAVEMANN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Muscatine County, Stuart P. Werling, Judge.

Brianna Havemann appeals the district court's denial of her motion to suppress. **AFFIRMED.**

Jeffrey L. Powell of Powell & McCullough, PLC, Coralville, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

A Muscatine County deputy sheriff stopped Brianna Kay Havemann for driving over the speed limit. A subsequent search of the vehicle uncovered marijuana.

The State charged Havemann with possession of marijuana. *See* Iowa Code § 124.401(5) (2017). Havemann moved to suppress the evidence on the ground that the deputy unjustifiably prolonged the stop, in violation of the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. Following a hearing, the district court denied the motion. The court tried Havemann on the minutes of testimony, found her guilty, and imposed sentence. Havemann appealed.

The Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution protect individuals against unreasonable searches and seizures. *State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013). A detention of an individual during a traffic stop is a seizure under the Fourth Amendment. *State v. Salcedo,* 935 N.W.2d 572, 577 (Iowa 2019). To comply with the constitutional requirements of the Fourth Amendment, the stop must be reasonable. *Id.* In general, a traffic stop is reasonable when police officers have probable cause or reasonable suspicion to believe a traffic law was violated. *State v. Brown*, 930 N.W.2d 840, 845 (Iowa 2019).

The deputy unquestionably had probable cause to stop Havemann based on her violation of the speed limit. *See State v. Predka*, 555 N.W.2d 202, 205 (Iowa 1996) (citing Iowa Code § 321.285). Havemann concedes as much. She focuses on the deputy's post-stop conduct. In her view, the deputy "impermissibly

extended the stop and unreasonably detained" her. She specifically contends the deputy lacked reasonable suspicion to prolong the stop for further investigation of the presence of drugs in her vehicle. *See In re Pardee*, 872 N.W.2d 384, 393 (Iowa 2015) (quoting *Rodriguez v. U.S.*, 575 U.S. 348, 355 (2015)) (stating a law enforcement officer "may conduct certain unrelated checks during an otherwise lawful stop," but the officer "may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual").

Our de novo review of the record reveals the following key facts. The deputy testified at the suppression hearing that he approached the car and spoke to Havemann, who "acted . . . a little more nervous than the general public" would when encountering law enforcement. The deputy "noticed a metal plate near the center console, between the center console and the passenger's seat." He asked Havemann if he could look at the plate. She handed it to him. He immediately noticed "four or five little pieces of a green leafy substance," which he identified as "marijuana shake." He testified the plate smelled of burnt marijuana. The deputy asked Havemann and the passenger if either smoked marijuana. The passenger replied he used to smoke but no longer did. The deputy decided to deploy his police service dog, Neiko, to sniff for drugs. He testified that, if the dog indicated the presence of an illegal substance, he intended to "deal with it." If not, he planned to issue a warning ticket for speeding and "cut them loose." The deputy returned to his car, where Neiko was waiting, called for backup, and began writing up a warning ticket. After backup arrived, he "sent [the dog] along [Havemann's] car, and . . . just let him do the work." The dog alerted "on the passenger door handle." The deputy asked the occupants to get out of the car. Havemann was asked if

there was anything inside. She responded "that there was a little bit of marijuana in the bag." Fifteen minutes elapsed from the time the deputy turned on his lights to the time he deployed Neiko.

The deputy's testimony is corroborated by a squad car video. The video underscores the deputy's virtually simultaneous handling of the speed-limit infraction and the marijuana investigation. *Cf. Salcedo*, 935 N.W.2d at 580 (noting "a complete lack of effort to address [the defendant's] specific traffic infraction" and stating the deputy was "stringing along the stop until a drug dog arrived"); *State v. Coleman*, 890 N.W.2d 284, 285 (Iowa 2017) (noting officer "did not terminate the stop upon determining [the registered owner of the vehicle] was not the driver of the vehicle. Instead, [the officer] proceeded to ask the driver of the vehicle . . . for his license, registration, and proof of insurance. . . . At the time [the officer] made his requests, [he] no longer had reasonable suspicion that a traffic offense had been committed"). On observing the "marijuana shake," the deputy questioned the occupants about illegal substance use and almost immediately decided to pursue a drug-related search.

We agree with the district court that the deputy possessed "specific and articulable facts that when combined with rational inferences from those facts" amounted to reasonable suspicion to extend the stop. *Cf. State v. Merrill*, 538 N.W.2d 300, 302 (Iowa 1995) ("We believe that the smell of burnt marijuana, coupled with [the defendant's] furtive attempts to hide something in his hand, provided [the] officer . . . with sufficient probable cause to search [the defendant's] hand."); *State v. Eubanks*, 355 N.W.2d 57, 59 (Iowa 1984) (stating "the odor of

[marijuana] in the automobile gave the patrolman reasonable cause to conduct a comprehensive search of the car").

In reaching this conclusion, we have considered Havemann's assertion that the evidence of a smell of marijuana was less than ironclad. Specifically, the deputy conceded he failed to include this detail in his official report and he acknowledged the plate blew off the top of the car where he later placed it, potentially dispersing the "shake." However, he insisted "[m]arijuana has a very distinct smell to it" and "[y]ou're gonna smell that marijuana residue or ash for some time." And, the video reveals that the officer had ample time to detect the marijuana smell before the plate blew away. The district court was in the best position to weigh the evidence, and the court's credibility finding in favor of the deputy is entitled to deference. *See State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017).

We affirm the district court's suppression ruling and Havemann's judgment and sentence for possession of marijuana.

**AFFIRMED.**