STATE of Iowa, Appellee,

v.

**Keith HEMINOVER, Appellant.**

No. 98–1890.

Supreme Court of Iowa.

Nov. 16, 2000.

_____

* Senior judge assigned by order pursuant to

Iowa Code section 602.9206 (1999).

354

Paul Demro of Correll, Sheerer, Benson, Engels, Galles & Demro, Cedar Falls, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor and Julie H. Brown, Assistant Attorneys General, Thomas J. Ferguson, County Attorney, and Joel Dalrymple, Assistant County Attorney, for appellee.

LAVORATO, Chief Justice.

This appeal presents the question of whether the State is bound by the reasons an officer gives to justify a stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The court of appeals thought so and reversed a district court ruling that overruled defendant's Fourth Amendment motion to suppress in which the district court concluded that reasons other than those given by the stopping officer justified his stop of defendant's vehicle. On further review, we conclude that (1) in justifying a *Terry* investigatory stop, the State is not bound by the reasons given by the stopping officer; and (2) the district court was correct in overruling the motion on the grounds it gave. We therefore vacate the court of appeals decision and affirm the district court judgment.

## I. Background Facts and Proceedings.

On the evening of August 29, 1997, the Black Hawk County Sheriff's Office was conducting a traffic safety enforcement roadblock on Gilbertville Road at approximately 500 feet from the intersection of Plaza and Gilbertville Road. Plaza runs north and south. Gilbertville Road runs east and west.

At approximately 9 p.m., Keith Heminover was driving his van in a southerly direction on Plaza and turned west onto Gilbertville Road. At the time, Heminover's two minor sons were in the vehicle with him. When he was approximately 150 feet from the roadblock, Heminover stopped his vehicle. Deputy sheriff Ben Ramirez waived his flashlight at Heminover, directing him to move forward and pull over. At that point, Heminover placed his van in reverse, backed into the intersection of Plaza and Gilbertville Road, and drove south on Plaza away from the roadblock.

Ramirez followed Heminover in his patrol car and pulled him over. After stopping Heminover, Ramirez noticed that Heminover smelled of alcohol. The deputy asked Heminover if he had been drinking, and Heminover replied that he had consumed a few beers. Ramirez then asked Heminover to submit to a roadside sobriety test, to which Heminover agreed. Ramirez conducted a horizontal nystagmus test on Heminover, which Heminover failed. During the test, Heminover was swaying side to side and front to back. Heminover refused Ramirez's request to take a preliminary breath test, after which the deputy arrested him for operating while intoxicated.

The State charged Heminover with (1) OWI in violation of Iowa Code section 321J.2 (1997), (2) two aggravated misdemeanor counts of child endangerment in violation of Iowa Code section 726.6(1)(a), and (3) one simple misdemeanor count of failure to obey a police officer in violation of Iowa Code section 321.229. The State later amended the trial information to elevate the OWI charge to a second offense.

Heminover moved to suppress any evidence regarding (1) the field sobriety tests, (2) comments about drinking, and (3) drinking prior to the field sobriety tests. Later, Heminover amended his motion, asserting that because the safety inspection roadblock was illegal from its inception, any evidence gathered or observed after Heminover encountered the roadblock was illegally seized and should be suppressed.

Following a hearing on the motion to suppress, district associate judge J.G. Johnson denied the motion. The court concluded that the roadblock safety check violated Iowa Code section 312K.1(2) because there was no evidence showing that (1) the roadblock was authorized by "policy-making administrative officers of the law enforcement agency" and (2) there were "advance warning signs ... erected to provide timely information to approaching motorists of the roadblock and its nature." On this basis, the court concluded Ramirez was not authorized to stop Heminover. The court further concluded that Heminover's failure to obey Ramirez's

signals was not a violation of the law and did not create reasonable cause for the deputy to stop him.

Additionally, the court concluded that turning away from a roadblock does not alone constitute reasonable cause to stop a vehicle. Nevertheless, the court concluded that, in backing away from the roadblock and resuming travel in a different direction, Heminover violated state law. Citing this violation, the court concluded there was reasonable cause for Ramirez to pursue Heminover and make the initial stop.

Later, in a trial based on stipulated minutes, district associate judge James Moothart found Heminover guilty of all charges. District judge James C. Bauch entered judgment and sentence. Heminover appealed, and we transferred the case to the court of appeals. The court of appeals reversed the convictions.

We granted the State's application for further review. The sole issue is whether the district court correctly determined there was reasonable cause for Ramirez to stop Heminover's vehicle.

In his appeal, Heminover presents two arguments in support of his position that the evidence gathered, after the stop, was illegally obtained. First, he contends the roadblock was illegal. The State concedes the roadblock was illegal, so we give that contention no further consideration. Second, he contends that his conduct in backing up near the roadblock did not constitute reasonable cause for the stop.

■■■ Heminover's second contention raises a constitutional issue under the Fourth Amendment to the Federal Constitution. We review de novo the ultimate conclusion reached by the district court on a motion to suppress. *See Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, 920 (1996). Fact-findings underlying the district court's ruling on such a motion are binding on the appellate courts if supported by substantial evidence. *State v. Cline,* 617 N.W.2d 277, 280 (Iowa 2000).

## II. Reasonable Cause for the Stop.

On this issue, the district court concluded that, in backing away from the roadblock and resuming travel in a different direction, Heminover violated, or at least potentially violated, state law. The court found that, when Heminover backed away from the roadblock, he traveled 150 feet eastbound on the westbound portion of a divided highway. The court likened this to traveling the wrong direction on a one-way street. The court similarly found that, in changing directions to head south, Heminover briefly backed his van north along a southbound road. Finally, the court found that, in backing into the intersection, Heminover engaged in inherently dangerous activity, as the intersection was very busy with semitrailer truck traffic.

Determining that there was at least a possible violation of law, the court concluded that there was reasonable cause for Ramirez to pursue Heminover and make the initial stop. On this basis, the district court denied Heminover's motion to suppress.

On appeal, Heminover challenged the district court's rationale, contending that Ramirez did not charge him with "improper backing." For this reason, Heminover says, Ramirez did not believe Heminover violated the law.

The State contended that Ramirez had reasonable cause to stop Heminover because he engaged in "improper backing," and this constituted a traffic violation. A traffic violation, the State further contended, gives an officer probable cause to stop a motorist.

The court of appeals noted that Ramirez testified that he did not stop Heminover for "improper backing" but instead stopped him because Ramirez believed that Heminover was attempting to avoid a roadblock. Relying on language in our prior cases, the court of appeals concluded

that (1) officers are held to their true reasons for stopping a vehicle and (2) a court will not allow officers to justify a stop with reasons upon which they did not actually act. The court therefore refused to consider "improper backing" as grounds for the stop.

The court then considered Ramirez's stated reason for the stop—avoidance of the roadblock—and concluded that Heminover's actions in turning back did not give rise to a reasonable suspicion of criminal activity.

The court of appeals' reasons for refusing . to consider "improper backing" as grounds for the stop raises the following issue: Is the State limited to the reasons stated by the investigating officer in justifying the challenged stop based on reasonable cause? We have said "no" when the stop was premised on probable cause. *See Cline,* 617 N.W.2d at 280–81; *State v. Predka,* 555 N.W.2d 202, 206 (Iowa 1996). We have said "yes" in several cases before *Cline* when the stop was premised on reasonable cause. *See, e.g., State v. Jones,* 586 N.W.2d 379, 382 (Iowa 1998); *State v. Wiese,* 525 N.W.2d 412, 415 (Iowa 1994); *State v. Jamison,* 482 N.W.2d 409, 413 (Iowa 1992); *State v. Rosenstiel,* 473 N.W.2d 59, 61 (Iowa 1991); *State v. Bailey,* 452 N.W.2d 181, 182 (Iowa 1990); *State v. Lamp,* 322 N.W.2d 48, 51 (Iowa 1982); *State v. Aschenbrenner,* 289 N.W.2d 618, 619 (Iowa 1980). For reasons that follow, we now think the State should *not* be limited to the reasons stated by the investigating officer in either instance.

■■■ **A. Background.** The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." The Fourth Amendment is made applicable to the states under the Fourteenth Amendment to the Federal Constitution. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961); *State v. Ceron,* 573 N.W.2d 587, 592 (Iowa 1997). Regardless of its relevancy or probative value, evidence obtained in violation of this provision is inadmissible. *Predka,* 555 N.W.2d at 205.

■■ When the police stop a car and temporarily detain an individual, the temporary detention is a "seizure" within the meaning of the Fourth Amendment. *Whren v. United States,* 517 U.S. 806, 809–10, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89, 95 (1996); *Predka,* 555 N.W.2d at 205. The detention is such a seizure even though the detention is only for a brief period of time and for a limited purpose. *Whren,* 517 U.S. at 809, 116 S.Ct. at 1772, 135 L.Ed.2d at 95; *Predka,* 555 N.W.2d at 205. For this reason, "[a]n automobile stop is ... subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren,* 517 U.S. at 810, 116 S.Ct. at 1772, 135 L.Ed.2d at 95; *accord Predka,* 555 N.W.2d at 205.

*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is the landmark case on investigatory stops. *Terry* recognized a police officer's authority to stop an individual on less than probable cause for the purpose of investigating unusual behavior that reasonably causes the officer to believe criminal activity is afoot.

To justify the stop, *Terry* required that the police officer "be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.' Additionally, a court in determining the reasonableness of the particular search or seizure must judge the facts "against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id.* at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

■■ In short, an investigatory stop of a vehicle is constitutionally permissible only if the officer who has made the stop has

specific and articulable cause to reasonably believe criminal activity is afoot. Circumstances raising mere suspicion or curiosity are not enough.

### 1. Cases prior to *Cline* and *Predka.*

In *State v. Cooley,* this court first applied *Terry* to a stop of a motor vehicle. 229 N.W.2d 755, 759–61 (Iowa 1975). The State argued that Iowa Code section 321.492 (1971) gave the officers who had stopped the defendant's vehicle the right to inspect the operator's license pursuant to Iowa Code section 321.492. *Cooley,* 229 N.W.2d at 757. We disposed of that contention quickly, concluding the reason given was pretextual. We explained that, when the primary purpose of the stop is not to inspect the operator's license but to examine the contents of the car, the detention is not in good faith but is a mere subterfuge or excuse for a failure to procure a search warrant. On the other hand, when the officer stops the vehicle in good faith to examine the operator's license, then the officer is not deprived of his power to arrest for an offense committed in his presence. *Id.* at 758–59.

We then proceeded to do a *Terry* analysis but concluded that the facts articulated by the officers justifying the stop were not sufficient to uphold the stop constitutionally. *Id.* at 760.

Several of our cases dealing with investigatory stops based on reasonable cause since *Cooley* have cited it as authority for the proposition that "[o]fficers are bound by their true reason for making the stop. They may not rely on reasons they could have had but did not actually have." *Aschenbrenner,* 289 N.W.2d at 619; *see also Jones,* 586 N.W.2d at 382; *Wiese,* 525 N.W.2d at 415; *Jamison,* 482 N.W.2d at 413; *Rosenstiel,* 473 N.W.2d at 61; *Bailey,* 452 N.W.2d at 182; *Lamp,* 322 N.W.2d at 51.

In *Aschenbrenner,* the officers did not articulate at the time of the stop the basis for it, which they claimed later in the suppression hearing. 289 N.W.2d at 621. We emphasized that "the reasonable cause test does not depend on what cause they articulated; it depends on what the basis of the stop actually was." *Id.*

In *Bailey,* the officer who stopped the defendant's car testified that he made the stop pursuant to a radioed request from a fellow officer. 452 N.W.2d at 182. When cross-examined, the officer stated the reason for the stop did not involve the manner in which the vehicle was driven. *Id.* The district court denied the defendant's motion to suppress, concluding that the manner in which the defendant was operating his car produced a reasonable suspicion of criminal activity. *Id.* On the defendant's appeal of his conviction for operating while intoxicated, the State sought to uphold the validity of the stop for the same reasons relied on by the district court—that the manner in which the defendant was driving his car produced a reasonable suspicion of criminal activity. *Id.* We rejected the State's argument on the basis that "officers are bound by the real reasons for their actions" and that "[t]he stop may not be upheld based on reasons that might have existed but in fact did not." *Id.* We found these rules particularly applicable in that case where the State asked us "to uphold the stop based on an officer's exercise of judgment that in fact never occurred." *Id.* at 183.

We have carefully reviewed *Cooley* and find nothing in that opinion that suggests the case stands for the proposition that in a *Terry* stop officers are bound by their real reasons for making the stop. Such a rule calls for a subjective analysis that is inconsistent with the objective analysis that *Terry* requires.

In *Cooley,* the real reason the officers stopped the defendant's car was because the officers believed the defendant's actions before entering his car were suspicious. 229 N.W.2d at 758–59. (The officers were on special assignment to investigate armed robberies and house prowlings in the area.) As mentioned, we therefore held the State could not

use the excuse for the stop that the officers wanted to examine the defendant's driver's license. *Id.* at 759.

However, notwithstanding a finding that this excuse was pretexual, the court in *Cooley* went on to do an objective analysis under *Terry* to determine whether the following facts were sufficient to uphold the stop: (1) the defendant's vehicle was seen parked in an area having a high crime rate; (2) the vehicle carried out-of-county license plates; (3) the defendant engaged in conversation with an individual suspected by the police to be a drug dealer and robber; (4) occupants of the car, including the defendant, were white in a predominantly black area; and (5) a woman was driving the car and the defendant was a passenger. 229 N.W.2d at 760. The court held these facts were "a far cry from specific and articulable facts which, with rational inferences, can be objectively said to have reasonably warranted the involved car-stoppage and attendant intrusion upon defendant's constitutionally guaranteed rights." *Id.* at 761.

We therefore suggest that subsequent cases invoking the rule that in cases involving a *Terry* stop officers are bound by their true reasons—a subjective analysis—are contrary to, rather than consistent with, *Cooley* and *Terry,* both of which call for an objective analysis. These subsequent cases were relying on the pretextual analysis in *Cooley,* but we think they were incorrect in applying that analysis in a case involving a *Terry* stop. In fact, the first case to cite *Cooley* for the rule that officers are bound by the true reasons for the stop under a *Terry* analysis cited to the pretextual analysis in *Cooley* for its authority. *See Aschenbrenner,* 289 N.W.2d at 619. Cases following *Aschenbrenner* have simply cited *Aschenbrenner* and, in some cases, have in addition cited to the pretextual analysis in *Cooley.*

It is interesting to note that one year after this court decided *Cooley* and four years before it decided *Aschenbrenner,* the court very clearly said that in a *Terry* stop

the test for reasonable cause to stop "is not the policeman's subjective theory, but whether the record discloses articulable objective facts were available to the officer to justify the stop." *State v. Donnell,* 239 N.W.2d 575, 578 (Iowa 1976).

In support of this proposition, the court cited several federal appellate cases, each of which involved *Terry* stops. *See, e.g., United States v. Vital–Padilla,* 500 F.2d 641, 644 (9th Cir.1974) (holding that, even if officers' stated reasons for conducting an investigatory stop are insufficient to justify the stop, the stop is still valid if objectively reasonable based on other facts within the officers' knowledge at the time of the stop); *United States v. Harflinger,* 436 F.2d 928, 933 (8th Cir.1970) (holding that, when objective facts justify an investigatory stop, the stop is constitutional even if the officer's stated reasons for the stop are insufficient). Apparently, in *Aschenbrenner* and subsequent cases relying on *Aschenbrenner,* this court overlooked *Donnell.*

2. **Cases from other jurisdictions.** Other courts and commentators support our conclusion that a police officer's subjective reasons for a stop are not controlling in a *Terry* stop. This is because, under a *Terry* analysis, the reasonable-suspicion test is measured according to an objective standard and not a subjective standard. *See, e.g., Ornelas,* 517 U.S. at 696, 116 S.Ct. at 1661–62, 134 L.Ed.2d at 919 ("The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause."); *United States v. Ozbirn,* 189 F.3d 1194, 1199 (10th Cir.1999) (holding that, even though officer might not have had probable cause to stop based on the reason the officer gave for the stop, the officer had reasonable grounds under *Terry* to stop based on his observations of erratic driving

by the defendant); *United States v. McKie*, 951 F.2d 399, 402 (D.C.Cir.1991) ("The *Terry* standard being one of objective reasonableness, we are not limited to what the stopping officer says or to evidence of his subjective rationale; rather, we look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been suspicious."); *United States v. Cardona–Rivera*, 904 F.2d 1149, 1153 (7th Cir. 1990) (holding that pretext proffered for a stop of driver who had left his car and fled when police approached would not defeat lawfulness of stop and ensuing escalation that led to arrest when it was obvious officers stopped driver as suspect in drug transactions, and they had objectively reasonable grounds for doing so); *United States v. Hawkins*, 811 F.2d 210, 213–15 & n. 5 (3d Cir.1987) (holding that in a *Terry* stop, the stop could be justified based on an offense other than that stated by the officers involved); *Commonwealth v. Smigliano*, 427 Mass. 490, 493, 694 N.E.2d 341, 344 (1998) (holding that, notwithstanding officer's testimony that he did not suspect defendant of any wrongdoing but believed defendant was lost, the facts and circumstances known to the officer were sufficient to create a reasonable suspicion of operating under the influence in a reasonable police officer to justify a *Terry* stop regardless of the officer's subjective state of mind); *Zimmerman v. North Dakota Dep't of Transp.*, 543 N.W.2d 479, 481 (N.D.1996) (holding that notwithstanding officer's testimony that she stopped defendant's car because another officer directed her to do so, the fact that the officer observed what she thought to be a traffic violation gave her reasonable cause justifying the *Terry* stop, even though the stated reason for the stop alone may not have provided an adequate basis for the stop); 4 Wayne R. LaFave, *Search and Seizure* § 9.4, at 139–40 (1996 & Supp.2000) (stating that the reasonable-suspicion test under *Terry* is "*purely* objective and thus there is no requirement that an actual suspicion by the officer be shown" and "the objective grounds as to one offense are not defeated because the officer either thought or stated he was acting with regard to some other offense or on some other basis entirely").

**3.** ***Whren v. United States.*** Although *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), involves probable cause to stop because of a traffic violation, we think the case nevertheless settles the question. *Whren* held that "the constitutional reasonableness of traffic stops" does not "depend[ ] on the actual motivations of the individual officers involved." *Whren*, 517 U.S. at 813, 116 S.Ct. at 1774, 135 L.Ed.2d at 98. The Court concluded that, because the officers had probable cause to stop, it made no difference that the officers' traffic-violation ground for approaching the vehicle was pretextual. *Id.* at 812–13, 116 S.Ct. at 1774, 135 L.Ed.2d at 97–98. In two recent cases, we followed *Whren* in vehicle-stop cases based on probable cause. *See Cline*, 617 N.W.2d at 281; *Predka*, 555 N.W.2d at 205.

We say *Whren* settles the question because we think there should be no distinction between a stop based on probable cause and a stop based on reasonable suspicion, *i.e.*, a *Terry* stop. The precise point was decided in *Hawkins*. The question there was whether a *Terry* stop could be justified on an offense other than that stated by the officer involved. *Hawkins*, 811 F.2d at 212–13. The dissent made the argument that, although the probable-cause standard is a purely objective one, the reasonable-suspicion standard must be both objectively reasonable and subjectively actual. *Id.* at 222 (Rosenn, J., concurring in part and dissenting in part). By its very terms, the dissent asserted, a suspicion in essence is perception or belief and is, therefore, inherently subjective. *Id.*

The majority in *Hawkins* rejected the argument, stating:

The dissent suggests that while an objective standard may be appropriate for arrest cases, where the issue is probable cause, only a subjective standard is appropriate for investigatory stops, which are judged under a reasonable suspicion inquiry. We do not find this distinction persuasive. The probable cause and reasonable suspicion tests are similar in that they both look to the incriminating facts known to the seizing officer to determine the validity of a "seizure" under the Fourth Amendment.

*Id.* at 215 n. 5. In other words, both tests are objective.

■ Evidently, in *Cline,* a probable-cause case, we implicitly agreed there should be no such distinction because we expressly overruled three cases—*Wiese, Rosenstiel,* and *Aschenbrenner*—which, as earlier mentioned, held that the motivation of the officer was controlling in determining the validity of a *Terry* stop. *See Cline,* 617 N.W.2d at 281 (citing *Wiese,* 525 N.W.2d at 415; *Rosenstiel,* 473 N.W.2d at 61; *Aschenbrenner,* 289 N.W.2d at 619). We reaffirm that ruling and hold that in *Terry* stop cases the motivation of the officer stopping the vehicle is not controlling, and the officer is not bound by the real reasons for the stop. The test for a *Terry* stop and one based on probable cause is the same: objective. The State is therefore not limited to the reasons stated by the investigating officer in justifying a *Terry* stop.

■ **B. Analysis.** Because the *Terry* standard is one of objective reasonableness, we are not limited to what Ramirez says or to evidence of his subjective rationale. Rather, we look to the record as a whole to determine what facts were known to the deputy and then consider whether a reasonable officer in those circumstances would have reasonably believed Heminover was committing a traffic offense as the district court found. *See United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981) (holding that, in determining what cause is suffi-

cient to justify the stop, the court must take into account the "whole picture," and "[b]ased upon that whole picture, the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity"). In making that determination, we keep in mind that the level of objective justification for the stop, *i.e.,* the level of reasonable suspicion, "is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989).

Although Ramirez testified that he stopped Heminover because he believed that Heminover was attempting to avoid a roadblock, the deputy also testified to a possible traffic violation:

Q. And what happened next?

A. At that point, I observed Mr. Heminover's vehicle stop . . . .

. . . .

Q. Okay. And approximately how far from the intersection did the defendant's vehicle travel?

A. Roughly about 150 feet.

Q. And then what happened?

A. Then he stopped—or like I said, he traveled that distance, and then he stopped. And when I started waving him over, he started to back up. That's when I noticed that he was backing up and out into the intersection.

. . . .

Q. What happened next?

A. Then he backed out into the intersection, and as he backed out into the intersection, he slowed for some oncoming traffic, and that's when I realized that he was trying to get back down and get down this way. And so then I got into my patrol car, which was sitting over here, came back around and made the stop on Mr. Heminover.

Q. Let me stop you a little bit here and back up. You said he backed up

on—I assume he's on Gilbertville. He backed up on Gilbertville Road?

A. That's correct.

Q. That, in and of itself, is that a violation of the Iowa Code?

. . .

A. Yes, it is. Improper backing.

There was other evidence that Plaza Drive, the highway Heminover was backing into, is a very busy highway with semi-trailer truck traffic. Taking this "whole picture" into consideration, we find a reasonable officer with knowledge of the facts known to Ramirez would have a particularized and objective basis to suspect Heminover was committing a traffic violation, *i.e.*, improper backing. Iowa Code section ·321.323 covers this offense and provides:

*A person shall not cause a vehicle to be moved in a backward direction on a highway unless and until the vehicle can be backed with reasonable safety,* and shall yield the right of way to any approaching vehicle on the highway or an intersecting highway which is so close as to constitute an immediate hazard.

(Emphasis added.) For these reasons, we conclude the stop of Heminover's vehicle was justified. Therefore, any evidence Ramirez obtained thereafter was not in violation of Heminover's Fourth Amendment rights.

### III. Disposition.

Because there were facts giving rise to a reasonable suspicion to believe Heminover was committing a traffic violation, the investigatory stop of his vehicle was justified. For this reason, any evidence Ramirez obtained thereafter was not in violation of Heminover's Fourth Amendment rights. We vacate the court of appeals decision to the contrary and affirm the judgment of the district court.

* Senior judge assigned by order pursuant to

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

McGIVERIN, S.J.,* participates in place of LARSON, J., who takes no part.