**IN THE COURT OF APPEALS OF IOWA**

No. 4-007 / 12-1897
Filed February 19, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ALEJANDRO SOILO MANZANARES,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Richard D.

Stochl, Judge.


        A defendant appeals a district court's denial of a motion to suppress.

**AFFIRMED.**


        Ryan Mitchell of Orsborn, Milani, Mitchell & Goedken, L.L.P., Ottumwa, for

appellant.

        Thomas J. Miller, Attorney General, Heather R. Quick, Assistant Attorney

General, Thomas J. Ferguson, County Attorney, and Brad Waltz, Assistant

County Attorney, for appellee.


        Considered by Danilson, C.J., and Vaitheswaran and Mullins, JJ.

**MULLINS, J.**

Alejandro Manzanares appeals from the district court's denial of a motion to suppress. He argues Officer Zubak did not have reasonable suspicion of a crime to execute an investigatory vehicle stop. We affirm the district court's denial.

## I. Background Facts and Proceedings

On March 16, 2011, Investigator Ryan Bellis of the Tri-County Drug Task Force gave information to Waterloo Police Officer Joseph Zubak that a light-skinned man from Minnesota would be trafficking drugs at Flirt's Gentleman's Club in downtown Waterloo that day. Officer Zubak surveyed the area around Flirt's that evening and saw a white Lincoln-Mercury Cougar with Minnesota license plates parked close to Flirt's. He did not see any other vehicle in Flirt's parking lot with Minnesota license plates. Through the use of his in-car computer, Officer Zubak determined that the registered owner of the vehicle with that license plate was Alejandro Manzanares.

Officer Zubak then left Flirt's and returned approximately four hours later, at 12:45 a.m. on March 17, 2011. He watched the same white Minnesota Cougar pull into the Flirt's parking lot. The driver of the Cougar turned off the engine and sat in the vehicle for five or ten minutes. No one approached the vehicle or exited it during that time. The Cougar then drove away from Flirt's, north on Highway 63. Officer Zubak followed the Cougar and ran Manzanares's name and date of birth through his in-car computer in an effort to obtain driver's

license information from the Iowa and Minnesota databases. The search turned up no records for Manzanares.

While Officer Zubak was following the Cougar, he pulled up next to the vehicle and looked at the driver. Officer Zubak could see the profile of the driver and determined he appeared to be the same age as the registrant. The Cougar subsequently pulled off the road into the parking lot of a closed video store. Officer Zubak drove past the video store parking lot but watched in the rearview mirror as the Cougar pulled out of the parking lot and continued driving north. Officer Zubak did a u-turn in order to follow the Cougar. As Officer Zubak followed the Cougar, he ran Manzanares's name and date of birth through the Iowa and Minnesota databases again. His search again turned up no driver's license records.

Officer Zubak then stopped the Cougar and asked the driver, Manzanares, to produce his driver's license. Manzanares could not find it in his pockets, so Manzanares gave Officer Zubak his name, date of birth, and social security number. While standing at the Cougar, Officer Zubak could smell marijuana from inside the vehicle. Officer Zubak then had dispatch search using the information Manzanares gave, but dispatch still did not find a driver's license record in the Iowa or Minnesota databases. After going back to the Cougar, Officer Zubak asked Manzanares for anything with his name on it, and Manzanares pulled out his Minnesota driver's license. A backup officer, Officer Nissen, showed up, and Officer Zubak asked him to see if he smelled anything coming from the vehicle.

While Officer Nissen spoke with Manzanares, Officer Zubak contacted his dispatcher, who ran Manzanares's driver's license number and found it was valid.

Officer Nissen asked Manzanares whether there was anything illegal in the vehicle, and Manzanares handed him marijuana and a device for smoking it. The officers placed Manzanares under arrest and searched his person. The officers found two baggies of cocaine in Manzanares's pockets and then proceeded to search the vehicle. The officers found numerous items in the vehicle, including $752 in cash, more marijuana, and ecstasy pills.

The State charged Manzanares with (1) possession of ecstasy with intent to deliver, (2) possession of marijuana with intent to deliver, (3) failure to affix a drug tax stamp, and (4) possession of cocaine.

In May 2011 Manzanares filed a motion to suppress all evidence from the traffic stop. He filed amendments to the motion in February 2012 and April 2012. Following a June 19, 2012 suppression hearing, the district court denied the motion. Manzanares then agreed to a trial on the minutes. On July 6, 2012, Manzanares was found guilty of all charges. Manzanares now appeals, alleging the stop of his vehicle was unreasonable and all evidence should be suppressed.

## II.     Standard of Review

Manzanares alleges violations of the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. We review constitutional challenges de novo, considering the totality of the circumstances. *State v. Cook*, 530 N.W.2d 728, 731 (Iowa 1995). When an Iowa constitutional claim is made but the court is not urged to consider the Iowa Constitution

differently than the federal constitution, we will not separately discuss the Iowa Constitution. *See State v. Clark*, 814 N.W.2d 551, 560 (Iowa 2012) ("We have considered the federal and state constitutional provisions 'as congruent' for purposes of appeal when the appellant provides no argument they should be applied differently.").

## III.    Analysis

Manzanares argues the stop of his vehicle violated his constitutional rights. Both the United States Constitution and the Iowa Constitution protect individuals against unreasonable searches and seizures by the government. U.S. Const. amend. IV; Iowa Const. art. 1, § 8. Warrantless searches are per se unreasonable unless an exception applies. *Cook*, 530 N.W.2d at 731. One well-established exception to the warrant requirement "allows an officer to briefly stop an individual or vehicle for investigatory purposes when the officer has a reasonable, articulable suspicion that a criminal act has occurred, is occurring, or is about to occur." *State v. Vance*, 790 N.W.2d 775, 780 (Iowa 2010). The police officer must "'be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Heminover*, 619 N.W.2d 353, 357 (Iowa 2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)), *overruled on other grounds by State v. Turner*, 630 N.W.2d 601 (Iowa 2001).

We use an objective standard to determine whether the facts available to the officer would "lead a reasonable person to believe that the action taken by the officer was appropriate." *State v. Kinkead*, 570 N.W.2d 97, 100 (Iowa 1997)

(citing *Terry*, 392 U.S. at 21–22). In determining the reasonableness of the stop, we look at the totality of the circumstances viewed "'through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" *State v. Kreps*, 650 N.W.2d 636, 642 (Iowa 2002) (quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C. Cir. 1976)). If the State cannot prove that the police officer had a reasonable suspicion of criminal activity, all the evidence recovered from the investigatory stop must be suppressed. *Vance*, 790 N.W.2d at 781.

Manzanares argues there was not reasonable suspicion to initiate an investigatory stop because there were no articulable facts to suggest a criminal act had occurred or was going to occur. He asserts that because the officer's driver's license search elicited no records for Manzanares, there were no articulable facts to indicate Manzanares was actually driving without a valid license.

When there is an articulable and reasonable suspicion that a motorist is unlicensed, an officer may stop the vehicle to check the driver's license and registration. *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). Using information obtained from a successful vehicle registration check, Officer Zubak ran Manzanares's name and date of birth using his in-car computer at least twice to obtain driver's license records from Iowa and Minnesota. Both times Officer Zubak received no records regarding a driver's license for Manzanares, the registered owner. At the time, Officer Zubak presumed the owner of the vehicle was the operator and believed this lack of records meant Manzanares did not

have a driver's license and was driving illegally. However, he admitted in court there could have been something wrong with the search and he had not received information Manzanres's license had been revoked or suspended.

Manzanares asserts that because Officer Zubak had no proof of a revoked or suspended license, there cannot be reasonable suspicion of driving without a license. Yet,

> "officers [are] not required to rule out all possibility of innocent behavior before initiating a brief stop and request for identification. . . . Even if it [is] equally probable that the vehicle or its occupants were innocent of any wrongdoing, police officers must be permitted to act *before* their reasonable belief is verified . . . ."

*Kreps*, 650 N.W.2d at 642 (quoting *United States v. Holland*, 510 F.2d 453, 455 (9th Cir. 1975)). Officer Zubak double checked to make sure he could not obtain records from the states where he believed Manzanares was most likely to be licensed. Simply because there are other, innocent explanations for a person's actions or for the lack of computer records does not preclude an officer the ability to investigate. *See id.*

Just as Officer Zubak did not obtain a record that Manzanares was in fact driving without a valid license, the officer did not get confirmation that Manzanares was driving with a valid license. This uncertainty justifies an investigatory stop to determine the legality of Manzanares's driving. *See United States v. Cortez-Galaviz*, 495 F.2d 1203, 1206 (10th Cir. 2007) ("To be sure, the 'not found' response Officer Rapela received from the database did not as definitively indicate criminal activity as a 'no' response, but neither did it equate to an exculpatory 'yes,' and the suggestive ambiguity of the particularized and

objective information Officer Rapela had at hand justified his decision to warrant a brief traffic stop—even though it surely would not have sufficed for an arrest."). In fact, an investigatory stop's principal function is to "resolve the ambiguity as to whether criminal activity is afoot." *State v. Richardson*, 501 N.W.2d 495, 497 (Iowa 1993). Officer Zubak had reasonable suspicion, from the two driver's license searches alone, to stop the vehicle in order to resolve the uncertainty of Manzanares's driver's license status.[1]

Manzanares next argues that Officer Zubak's mistake as to Manzanares's license status is unreasonable and *State v. Jackson*, 315 N.W.2d 766, 767 (Iowa 1982), should not control this case. A mistake of fact may justify a traffic stop when the mistake is objectively reasonable. *State v. Lloyd*, 701 N.W.2d 678, 681 (Iowa 2005). In *Jackson*, an officer stopped the Jackson's vehicle because the vehicle did not have license plates, which is a violation of Iowa law. 315 N.W.2d at 767. When the officer spoke to him, Jackson pointed out a properly displayed department of transportation paper plate. *Id.* The court held that the officer's stop of Jackson's vehicle was not random or selective but the result of the officer's belief that Jackson was breaking the law by not displaying license plates. *Id.* The officer's mistake did not make the stop illegal. *Id.*

In the instant case, Officer Zubak perceived facts which made him believe Manzanares may have been driving without a valid license. Because the Iowa Supreme Court has already held officers may rely on mistakes of fact to justify

---

[1] The State also argues Officer Zubak had reasonable suspicion that Manzanares was involved in drug trafficking. We do not need to reach that issue because Officer Zubak had reasonable suspicion to stop the vehicle on the driver's license searches alone.

traffic stops, our analysis rests on whether the officer's mistake was reasonable. *See Lloyd*, 701 N.W.2d at 680–82. Even though a "no records" return does not always mean a person does not have a driver's license, it is one interpretation of the search. In Officer Zubak's experience, a "no records" return indicates the person does not have a driver's license. He double checked his in-car search in case there was an error, but the search continued to come up empty. Upon the facts available and his experience, Officer Zubak reasonably believed Manzanares had no driver's license, and the investigatory stop was therefore reasonable.

Manzanares also argues there was not reasonable suspicion to stop his vehicle because the officer "was not even sure that the registered owner was the vehicle's driver." However, in *Vance*, the Iowa Supreme Court rejected this assertion. 790 N.W.2d at 781; *see also Cortez-Galaviz*, 495 F.3d at 1207 ("[C]ommon sense and ordinary experience suggest that a vehicle's owner is, while surely not always, very often the driver of his or her own car."). The court held that there is reasonable suspicion to conduct

> an investigatory stop of a vehicle to investigate whether the driver has a valid driver's license when the officer knows the registered owner of the vehicle has a suspended license, and the officer is unaware of any evidence or circumstances indicating the registered owner is not the driver of the vehicle.

*Vance*, 790 N.W.2d at 781. The court made this determination for three reasons: it is reasonable to infer a registered owner of a vehicle will do the majority of driving the vehicle, requiring verification that the driver is the registrant would limit an officer's ability to investigate driver's license violations, and allowing an officer

to infer the registrant is driving ensures the safety of the roadways. *Id.* at 782. The *Vance* court did point out that there would not be reasonable suspicion if the officer can see that the driver is of a different gender or age than the registrant. *Id.*

This case is controlled by *Vance.* Officer Zubak noticed that the driver was of a similar age and gender to the registrant before beginning the investigatory stop. There were no facts or circumstances to indicate to Officer Zubak that Manzanares, the registrant, was not driving the vehicle. Therefore, it was reasonable for Officer Zubak to infer Manzanares was both the registrant and the driver of the vehicle. The district court correctly denied the motion to suppress.

**AFFIRMED.**

Vaitheswaran, J., concurs; Danilson, C.J., dissents.

**DANILSON, C.J.** (dissenting)

I respectfully dissent. Here the State attempts to create suspicion of criminal activity by its own ineptitude. We could surmise that either the officer erred in his data entry, an error existed within the database, or some other technological error prevented the retrieval of the correct information regarding the status of Manzanares' driver's license. We have no clue what error really occurred, but once full and accurate information was provided, an accurate response was obtained. The same can be said about the existence of criminal activity—the officer had no clue. The State may not create a reasonable suspicion of criminal activity because it was prevented from obtaining accurate information regarding the status of an individual's driver's license due to its own technological error or deficiency. I believe the motion to suppress should have been granted. I would reverse.