# IN THE COURT OF APPEALS OF IOWA

No. 18-1886
Filed February 5, 2020

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**CHARLES THOMAS STOPPELMOOR,**
　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Clay County, Charles K. Borth, District Associate Judge.


　　　Charles Stoppelmoor appeals the denial of his motion to suppress evidence. **AFFIRMED.**


　　　Matthew G. Sease of Sease & Wadding, Des Moines, for appellant.

　　　Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.


　　　Considered by Bower, C.J., and May and Greer, JJ.

**GREER, Judge.**

After a trial on the minutes of evidence, Charles Stoppelmoor was convicted of operating while intoxicated, second offense. On appeal, Stoppelmoor challenges the district court's denial of his motion to suppress evidence, arguing the arresting officer lacked reasonable suspicion to conduct an investigatory stop.

**I. Background Facts and Proceedings.**

Early in the morning on February 3, 2018,[1] while on patrol, Spencer Police Lieutenant Patrick Westfall observed a 2004 Chevy Silverado pickup truck driving below the posted speed limit. The lieutenant followed the truck and watched it drive near, but never cross, the center line and angle toward, but never strike, a curb. The driver corrected the truck motion with "a slight jerk" and continued on. Westfall admitted none of these maneuvers warranted a stop.

Eventually, the truck pulled over in front of a house that did not match the truck's registered owner. The driver, later identified as Stoppelmoor, turned off the engine and sat in the truck for a couple of minutes before exiting. He then walked to the house and climbed the porch stairs to the front door. Stoppelmoor stood at the front door for about forty-five seconds and did not knock or ring the doorbell.

Finding Stoppelmoor's behavior odd, Lieutenant Westfall pulled over behind the truck, without his squad car's overhead lights on and without blocking in the truck. He decided to approach Stoppelmoor to assess the situation. Lieutenant Westfall engaged his body camera audio and video, recording his interaction with Stoppelmoor from the moment he exited his patrol car. Because it was dark

---

[1] It was around 2:30 a.m.

outside, the body camera only revealed what was illuminated by the lieutenant's flashlight.

Describing the encounter as a "mutual meeting," Lieutenant Westfall approached the house and stood near the base of the porch steps. He greeted Stoppelmoor and asked if he was lost. He then asked why he was at this house so late and why he had not knocked on the door or rang the doorbell. The entire interaction lasts about eighty seconds. The lieutenant shined the flashlight on Stoppelmoor's entire body for most of the interaction, but at times he lowered the flashlight and it only illuminated Stoppelmoor's legs and the porch. During the conversation, the occupant of the residence appeared at the door confirming to the officer her knowledge of Stoppelmoor's presence at the house.

According to the lieutenant, almost as soon as he began speaking with Stoppelmoor he observed signs of intoxication including slurred speech, poor balance, and bloodshot, watery eyes. After observing these signs, he asked Stoppelmoor to step down and speak with him. Stoppelmoor complied. Once off the porch, the lieutenant asked Stoppelmoor if he had been drinking. Stoppelmoor admitted to having "a few beers," and the lieutenant administered field sobriety tests. After failing the tests, Stoppelmoor was arrested and charged with operating while intoxicated, second offense. *See* Iowa Code § 321J.2 (2018).

Stoppelmoor moved to suppress the evidence obtained after he was ordered off the porch. The district court denied the motion. Stoppelmoor elected for a trial on the minutes of evidence, after which the court found him guilty as charged. Stoppelmoor appeals.

## II.  Standard of Review.

We review alleged constitutional violations de novo.  *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004).  "We examine the entire record and 'make an independent evaluation of the totality of the circumstances.'"  *State v. Brown*, 930 N.W.2d 840, 844 (Iowa 2019) (quoting *State v. Meyer*, 543 N.W.2d 876, 877 (Iowa 1996)).  Because of its ability to weigh the credibility of witnesses, we defer to, but are not bound by, the district court's factual findings.  *State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007).

## III.  Analysis.

Stoppelmoor contends the officer lacked reasonable suspicion to seize him, thus violating his constitutional rights.  The Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution protect individuals from unreasonable searches and seizures.[2]  "Subject to a few carefully drawn exceptions, warrantless searches and seizures are per se unreasonable."  *State v. Lewis*, 675 N.W.2d 516, 522 (Iowa 2004).  "The State has the burden to prove by a preponderance of the evidence that a recognized exception to the warrant requirement applies."  *Id.*  "If the State does not meet this burden, all evidence obtained at the stop must be suppressed."  *Brown*, 930 N.W.2d at 855.

---

[2] U.S. Const. amend. IV ("The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ."); Iowa Const. art. I, § 8 ("The right of the people to be secure in their persons . . . against unreasonable seizures and searches shall not be violated . . . .").  Stoppelmoor raises both state and federal constitutional claims, but he does not argue for a separate analysis under the state constitution.  For that reason, we will consider his claims together.

There are, however, exceptions allowing for a warrantless search and seizure. "One recognized exception allows an officer to stop an individual or vehicle for investigatory purposes for a brief detention based only on a reasonable suspicion that a criminal act has occurred or is occurring." *State v. Baker*, 925 N.W.2d 602, 610 (Iowa 2019). "The purpose of an investigatory stop is to allow a police officer to confirm or dispel suspicions of criminal activity through reasonable questioning." *Id.* (quoting *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002)). "[T]o justify an investigatory stop, an officer must have reasonable suspicion, backed by specific and articulable facts, to believe criminal activity is afoot." *Id.* at 611. "Circumstances raising mere suspicion or curiosity are not enough." *Id.* (quoting *State v. Heminover*, 619 N.W.2d 353, 357 (Iowa 2000)).

Here the parties agree that Stoppelmoor's seizure occurred when Lieutenant Westfall asked him to step off the porch. *See, e.g.*, *State v. White*, 887 N.W.2d 172, 176 (Iowa 2016) ("[W]e conclude that [the defendant] was seized within the meaning of the Fourth Amendment when [the police officer] directed [him] to step off of the front porch and onto the driveway."). The parties disagree about whether the lieutenant had a reasonable suspicion that Stoppelmoor had been operating while intoxicated when the lieutenant initiated the seizure. Stoppelmoor argues that the body cam footage contradicts the lieutenant's testimony that Stoppelmoor was displaying signs of intoxication.

Even the district court observed, "The officer's body camera does not necessarily confirm all of [the lieutenant's] observations. The court recognizes, however, that an officer's detailed personal observations are not always apparent when later reviewing video footage of an encounter." After noting the technological

limitations, the court found the lieutenant's testimony credible and concluded the lieutenant had reasonable suspicion of a crime when he ordered Stoppelmoor to step off the porch.

After reviewing the footage and the testimony, we agree with the district court. The body camera footage is inconclusive, but it does not contradict the lieutenant's testimony. To address credibility determinations, we examine extrinsic evidence for contradictions in the officer's testimony. *State v. Tyler*, 830 N.W.2d 288, 296–97 (Iowa 2013) (video footage from body camera refuted officer's rationale for the stop). Slurred speech is a reasonable observation from the audio track of the video. However the footage is one piece of evidence to consider in the totality-of-the-circumstances analysis. Also relevant are the lieutenant's observations while following the truck, while watching Stoppelmoor park the truck and approach the house, and while interacting with Stoppelmoor. The district court found the lieutenant's testimony about these observations credible. After considering all of the evidence, the totality of the circumstances establishes a reasonable suspicion that Stoppelmoor was operating while intoxicated, which justifies the seizure under both the United States and Iowa Constitutions.

**IV. Disposition.**

For these reasons, we affirm the district court's denial of Stoppelmoor's motion to suppress.

**AFFIRMED.**