# IN THE COURT OF APPEALS OF IOWA

No. 24-2077
Filed September 4, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JASON ANTHONY PETERSEN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Plymouth County, Daniel P. Vakulskas, Judge.

        A defendant appeals his conviction for operating while intoxicated, third offense. **AFFIRMED.**

        Jack Bjornstad of Jack Bjornstad Law Office, Spirit Lake, for appellant.

        Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

        Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**TABOR, Chief Judge.**

Jason Petersen appeals the denial of his motion to suppress the evidence underlying his conviction for operating while intoxicated, third offense. Because the officers had reasonable suspicion to seize Petersen, we affirm the district court's suppression ruling.

## I. Facts and Prior Proceedings

One early morning in January 2024, a 911 caller reported that her husband, Jason Petersen, was being verbally abusive but had not hit her. After the call ended, she called back to say that Petersen left in a "white car" and was drunk. Officers Matthew Arens and Geoffrey Fay of the Le Mars Police Department received notice of the 911 calls—a possible domestic abuse assault in progress— and went to the Petersens' apartment, where the call originated. Just before the officers entered the parking lot, they saw a white Buick leave. Officer Fay radioed other units to look for a white Buick.

Meanwhile, Officer Robert Bendlin—who was patrolling nearby—heard the same information through dispatch. As Officer Bendlin drove northbound on a nearby street, a vehicle matching the description drove by him southbound. Believing the driver was Petersen and concerned he was returning to his apartment, Officer Bendlin turned around and followed the white car.

Petersen drove into a nearby parking lot and parked. The lot has only one entrance and exit. After advising the other units that Petersen was parked, Officer Bendlin followed Petersen into the lot and parked his patrol pickup truck a short

distance away in the path of the exit. He activated his truck's rear amber lights, which flashed both amber and blue and reflected on the trees and snow.[1]

After hearing that Petersen parked, Officer Fay walked over to the Regency Villa lot and approached Petersen's passenger door. The officer aimed a flashlight into the car and knocked on the window. Petersen made a quick hand gesture, prompting Officer Fay to open the door. Inside, Officer Fay smelled alcohol and noticed Petersen had bloodshot eyes and slurred speech. Officer Fay asked questions like "What's going on?" and "What happened, like, why would she call us?" Petersen admitted he "had a few" and, when asked what a few meant, he responded, "plenty," and that he was probably over the legal limit for driving. Petersen said he did not mean to drive but was trying to get away from his wife. The officers had him get out of the vehicle. From the first 911 call to the time that Petersen exited the vehicle, about ten minutes passed.

The State charged Petersen with operating while intoxicated, third offense. *See* Iowa Code § 321J.2(2)(c) (2024). Petersen moved to suppress the evidence stemming from his encounter with the Le Mars Police officers, arguing he was unlawfully seized. The district court denied the motion, finding he was seized but that the officers had reasonable suspicion for an investigatory stop.

Petersen filed a conditional guilty plea with the consent of the court and the State, reserving his right for appellate review of his motion to suppress under Iowa

---

[1] At the suppression hearing, the State played Officer Bendlin's patrol car video along with bodycam footage from Officer Daniel Swalve, who arrived at the lot shortly after Petersen parked. Officer Swalve's bodycam shows orange, red, and blue lights flashing from Officer Bendlin's truck and reflecting off the trees and snow.

Rule of Criminal Procedure 2.8(2)(b)(9). The district court sentenced Petersen to an indeterminate term of five years, suspended the sentence, and placed Petersen on probation for two years. Petersen challenges the denial of his motion to suppress.[2]

## II. Scope and Standard of Review

We review challenges to suppression rulings de novo when they implicate constitutional issues. *State v. Baker*, 925 N.W.2d 602, 609 (Iowa 2019). That review entails an independent evaluation of the totality of the circumstances in the entire record. *Id*. We defer to the district court's factual findings, but they do not dictate our result. *State v. Louwrens*, 792 N.W.2d 649, 651 (Iowa 2010).

## III. Analysis

Assuming without deciding that the officers seized Petersen, we examine whether their actions were constitutional. Petersen asks us to find that his wife's tip that he left in a "white vehicle" did not provide enough information to justify a seizure. We find the officers had reasonable suspicion to seize him based on the tip and the surrounding circumstances.

If officers have reasonable suspicion that a criminal act has occurred or is occurring, they may briefly stop an individual for investigative purposes. *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002). Reasonable suspicion is a less demanding standard than probable cause, requiring only "a substantial possibility that criminal conduct has occurred, is occurring, or is about to occur." *Id*. at 642 (quoting 4 Wayne R. LaFave, Search and Seizure § 9.4(b), at 146 (3d ed. 1996)).

---

[2] We have jurisdiction over his appeal. *See State v. Skullark*, 23 N.W.3d 49, 53 (Iowa 2025) (discussing Iowa Code section 814.6(3)).

The officer must "be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Heminover*, 619 N.W.2d 353, 357 (Iowa 2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). In determining the reasonableness of a seizure, we evaluate only the facts available to the officer at the moment of seizure. *Id*.

A tip may form the basis of reasonable suspicion so long as it has sufficient indicia of reliability. *Adams v. Williams*, 407 U.S. 143, 147 (1972). Even an anonymous tip, under the appropriate circumstances, can demonstrate sufficient indicia of reliability to provide reasonable suspicion. *Navarette v. California*, 572 U.S. 393, 397 (2014).

Petersen relies heavily on *State v. Kooima*, a case that outlines when an anonymous tip alleging that someone is driving intoxicated provides reasonable suspicion. 833 N.W.2d 202, 208–209 (Iowa 2013). Under *Kooima*, an anonymous tipster must (1) give an accurate description of the vehicle and its location, (2) base their information on contemporaneous personal observations of a crime in progress, and (3) give a specific example of a traffic violation. *Id*.

But Petersen was not pulled over for a traffic stop nor was the tip anonymous, so *Kooima* is not controlling. Unlike anonymous tips, tips from known individuals are more reliable. *Adams*, 407 U.S. at 146–47. Known tipsters can be held accountable for the information provided, and their reputation can be assessed. *Florida v. J.L.*, 529 U.S. 266, 270 (2000). Here, Petersen's wife was identified. Officer Fay and Officer Aren had visited her apartment where she told them that Petersen had been verbally abusive, was drunk, and left in a white vehicle. Officer Fay and Officer Aren corroborated the details of the story by

recalling that moments earlier they saw a white Buick leave the parking lot. Within minutes, Officer Bendlin saw a white Buick on a street near the Petersens' apartment complex. It was late at night, and there were few vehicles on the road.

Petersen points out that the wife's tip included no information about a traffic offense and Officer Bendlin saw no erratic driving. But the wife had interacted with Petersen and could be trusted to share her view that he was drunk. *State v. Murphy*, 451 N.W.2d 154, 155 (Iowa 1990) ("[A] a lay witness may express an opinion regarding another person's sobriety, provided the witness has had an opportunity to observe the other person."). For example, in *State v. Hagge*, we found reasonable suspicion existed when an identified 911 caller personally observed Hagge's intoxication inside a Pizza Hut but did not see her driving. No. 15-0652, 2015 WL 8364226, at *2–3 (Iowa Ct. App. Dec. 9, 2015). The same is true here. Plus, although Officer Bendlin did not report erratic driving, he was concerned that Petersen was heading back to the scene of the argument with his wife.

For these reasons, we find that the wife's tip was reliable and the officers had reasonable suspicion to conduct an investigatory seizure of Petersen.

**AFFIRMED.**